ESTHER MOSKOWITZ et al., as Executors of FANNIE MAN-
HEIMER, Deceased, Appellants and Respondents, *v.*
PEARL H. MARROW, Respondent and Appellant.

382

(Argued April 18, 1929; decided July 11, 1929.)

*Edward C. Weinrib* and *Milton Weiss* for plaintiffs, appellants and respondents. Testatrix at the time of her death had the sole beneficial interest in the accounts in the Greenwich Savings Bank and Bank for Savings which were awarded to the estate by the Special Term. The mere fact that the two accounts stood at one time in the names of both testatrix and defendant did not entitle the defendant to them, for during her lifetime testatrix divested the defendant of any ownership or right to survivorship in the accounts. (*Clary* v. *Fitzgerald,* 155 App. Div. 659; 213 N. Y. 696; *Scanlan* v. *Meehan,* 216 App. Div. 591; *Matter of Von Bernuth,* 143 N. Y. Supp. 672; *Havens* v. *Havens,* 213 N. Y. Supp. 230; *Matter of Kane,* 246 N. Y. 298; 247 N. Y. 219.) The New Netherland account belongs to the estate as a matter of law. (*Crawford* v. *West Side Bank,* 100 N. Y. 50; *Martin* v. *Farnsworth,* 49 N. Y. 555; *McDonald* v. *Sargent,* 201 N. Y. Supp. 129.) Testatrix at no time made a gift to the defendant of any of the savings bank accounts in this action. (*Matter of Von Bernuth,* 143 N. Y. Supp. 672; *Thomson* v. *Bank of British North America,* 82 N. Y. 1;

*Burnap* v. *National Bank of Potsdam*, 96 N. Y. 125; *Ostrom* v. *Greene*, 161 N. Y. 353; *Sherman* v. *Foster*, 158 N. Y. 587; *Helgar Corp.* v. *Warner's Features*, 222 N. Y. 449; *Matter of Fonda*, 206 App. Div. 61; *Barstow* v. *Tetlow*, 115 Me. 96.)

*Henry C. Burnstine* for defendant, respondent and appellant. By putting the two savings bank accounts awarded plaintiffs in the names of herself and her granddaughter, payable to either or the survivor, in April, 1924, testatrix created joint tenancies therein pursuant to the provisions of Banking Law, section 249, subdivision 3. No fraud or undue influence having entered into their creation, defendant, having survived her grandmother, became the sole owner thereof, regardless of deceased's later acts and declarations. (*Matter of McKelway*, 221 N. Y. 15; *Soper* v. *Edmans*, 204 App. Div. 223; *Matter of Tilley*, 166 App. Div. 240; 33 C. J. 907; *Matter of Buchanan*, 184 App. Div. 237; *Hayes* v. *Claessens*, 189 App. Div. 449; *Heiner* v. *Greenwich Savings Bank*, 118 Misc. Rep. 326; *McNett* v. *Crandell*, 172 App. Div. 375; *McDonald* v. *Sargent*, 121 Misc. Rep. 437; *Scanlan* v. *Meehan*, 216 App. Div. 591; *Havens* v. *Havens*, 126 Misc. Rep. 155; 215 App. Div. 756.) If the intent behind the creation of these accounts in the statutory joint form may be inquired into, it necessarily means the intent at the time of the creation of the accounts. In that event the question of intent would be open to evidence and the conclusion that a joint tenancy did or did not exist would necessarily flow from the finding or non-finding of an intention to create one, but in no event could there be room for the finding of a revocable gift. (*Kelly* v. *Beers*, 194 N. Y. 49.)

KELLOGG, J. Fannie Manheimer was the owner of substantial deposits, credited to her individual name, in New Netherland Bank, Excelsior Savings Bank, Bank

for Savings and Greenwich Savings Bank, all of the city of New York. On April 28, 1924, each of the banks, at the express direction of Fannie Manheimer, made a transfer of the fund deposited with it to a new account wherein the deposit was credited jointly to Fannie Manheimer and Pearl Harris, her granddaughter, payable to " either or the survivor of them." On the same day her pass books in the several banks were delivered by Fannie Manheimer to Pearl Harris. Thereafter the money remained on deposit, credited to the joint account of the two women, until the 5th day of December, 1924. On that day, Fannie Manheimer delivered a writing to each of the four banks, notifying each that the " privilege " granted by her to Pearl Harris " to withdraw any money or moneys from my account or joint account in your bank " was revoked, and instructing each to honor no signature other than her own for any withdrawal. In January, 1925, Fannie Manheimer withdrew the deposits in New Netherland Bank and Excelsior Savings Bank, and redeposited them therein to the credit of herself individually. In April, 1925, the accounts in these two banks, at the direction of Fannie Manheimer, were re-established in the joint names of herself and Pearl Harris, " payable to either or the survivor." On May 4th, 1925, Fannie Manheimer died. Shortly after her death, Pearl Harris, upon presentation of the appropriate pass books, withdrew from New Netherland Bank, Excelsior Savings Bank and Bank for Savings substantially all the moneys on deposit. She likewise presented the appropriate pass book to the Greenwich Savings Bank in an attempt to procure a withdrawal of the funds therein deposited. That bank refused to make payment, and still retains the moneys.

In this action brought by the executors of the last will and testament of Fannie Manheimer against Pearl Harris, now Pearl Harris Marrow, to recover the withdrawals, it has been held that the plaintiffs are entitled to

a recovery of the sums of money withdrawn from Bank for Savings, to the pass book of such bank, and to the pass book of the Greenwich Savings Bank, wherein the moneys deposited remain credited to the joint account. The theory of the recovery was that the notices served by Fannie Manheimer upon these banks on the 5th day of December, 1924, to permit no withdrawals by any person other than herself, were effectual to revoke the transfers to the joint accounts, made at her instance. On the other hand, it was held that Pearl Harris was entitled to the moneys withdrawn from New Netherland Bank and Excelsior Bank. These were the moneys which had been credited, *first*, to Fannie Manheimer individually; *secondly*, to the joint account of the two women; *thirdly*, to the individual account of Fannie Manheimer, and *fourthly*, after the giving of the notice of December 5th, 1924, to the joint accounts of Fannie Manheimer and Pearl Harris " payable to either or the survivor." The theory upon which a recovery of these funds was denied to the plaintiffs was that the redeposits to the joint accounts in April, 1925, rendered ineffectual, as to such moneys, the notices of attempted revocation previously given in December, 1924.

Formerly, the deposits made by Fannie Manheimer to the joint accounts of herself and Pearl Harris would have been insufficient to establish a gift, by the former to the latter, of an interest in the funds deposited, to take effect either presently or in future. (*Beaver* v. *Beaver*, 117 N. Y. 421; *Matter of Bolin*, 136 N. Y. 177; *Kelly* v. *Beers*, 194 N. Y. 49.) In *Beaver* v. *Beaver* it was held that a deposit made by a father to the individual credit of his son did not operate to pass title to the son. The court said: " We cannot close our eyes to the well-known practice of persons depositing in savings banks money to the credit of real or fictitious persons, with no intention of divesting themselves of ownership." In *Matter of Bolin*

it was held that a deposit made by Julia Cody in an account entitled " Julia Cody or daughter, Bridget Bolin " passed no title to Bridget Bolin. The court remarked that the only presumption from the form of the deposit would be that " the depositor so arranged for the purposes of convenience." It was also held that, even if a gift had been intended, there was lacking a delivery of the subject of the gift, either actual or symbolic, since the delivery of the pass book was an equivocal act, in that it might have been made either to consummate a gift or merely to satisfy the purposes of convenience. In *Kelly* v. *Beers* the deposit made was to " Kate V. Beers or Sarah E. Kelly, her daughter, or the survivor of them." It was said that the form of the deposit alone, under the authorities, would not be sufficient to constitute the making of a gift. Therefore, independently of any statute, the deposits made by Fannie Manheimer to the credit of herself and Pearl Harris, " payable to either or the survivor of them," and the delivery of the pass books to Pearl Harris, would have been insufficient either to establish an intention to make a gift or to effectuate a delivery of the subject-matter of a gift.

In the year 1909 the Legislature enacted chapter 2 of the Consolidated Laws, entitled " Banking Law " (Laws of 1909, chap. 10). Section 144 of this law provided in part as follows: " When a deposit shall be made by any person in the names of such depositor and another person and in form to be paid to either or the survivor of them, such deposit thereupon and any additions thereto made by either of such persons upon the making thereof shall become the property of such persons as joint tenants and the same together with all interest thereon shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both or to the survivor after the death of one of them, and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release

and discharge to said bank for all payments made on account of such deposit prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof."

That the purpose and effect of the enactment was to reverse the common-law rule and to make a deposit in the statutory form presumptive evidence of an intent to make a gift presently to take effect was definitely determined in *Clary* v. *Fitzgerald* (155 App. Div. 659). That case was decided in the year 1913; the decision was affirmed by this court in 213 New York, 696. There, Katherine Connelly, the aunt of Kate Fitzgerald, made a deposit in a savings bank to the credit of " Mrs. Kate Connelly or Mrs. Kate A. Fitzgerald, either or survivor, may draw." After the death of Mrs. Connelly the major part of the moneys deposited was withdrawn by Mrs. Fitzgerald. The action was brought by the administratrix of the estate of Mrs. Connelly to recover from Mrs. Fitzgerald the withdrawals. It was held that the form of the deposit had the effect, under section 144, of transferring title in the fund to Mrs. Fitzgerald, and the complaint was dismissed. The court said: " The deposit was one within the classification of the statute, made by the intestate in the names of herself ' and another person and in form to be paid to either or the survivor of them.' It would seem, therefore, if any effect is to be given to the direct and explicit language of the statute, this deposit, as the statute provides, thereupon, presumptively at least, became the property of the designated depositors ' as joint tenants; ' *i. e.*, as joint owners."

The court quoted with approval a statement from Brady on Bank Deposits, page 46: " It must be added that, under a New York statute, a deposit of this character would, today, create an estate in joint tenancy, even without the delivery of the pass book. But, under that statute, once the deposit is opened, and the estate in joint tenancy created, the depositor cannot revoke the

gift or take it back. If he draws the money and uses it he is accountable to the donee as any other joint tenant of personal property would be."

The provisions of section 144 were carried over into section 249 when the present Banking Law was enacted by chapter 369 of the Laws of 1914. Certain word changes were made necessary by the fact that the former section dealt with banks in general, while the new section was made applicable to none other than savings banks. Otherwise, in all matters of substance, the provisions of section 144 were re-enacted to form a part of section 249. There was added, also, at the foot of the old provisions, as re-enacted, a sentence containing a new provision which reads as follows: " The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor."

The plaintiffs lay great stress upon the wording of the added provision. They reason in this wise: A deposit in the statutory form will constitute evidence of an intent to give, but this evidence will be available only in an action to which either a savings bank or the " surviving depositor " may be a party. The intent which it will evidence in any action is an intention of the depositors " to vest title to such deposit and the additions thereto in such survivor." The form of the deposit, in an action between the depositors themselves, will have no probative value; it will not evidence, in any action, or for any purpose, an intent of the original depositor presently to vest title in his joint depositor. From these premises results the conclusion that the deposits are ineffective to transfer title until the death of the original depositor; that meanwhile the deposits are revocable at will by such depositor. If it were a fact that all the provisions of section 249, as they now appear therein, were enacted as

a completed whole at one and the same time, there might be force in the argument. Then it might with some justice be said that the Legislature, having stated the particular intention, to establish which the form of the deposit should constitute evidence, thereby negatived its value as proof of any other intent. Even then, the argument would render purposeless all the other provisions of the section. However, as we have seen, section 249 was not enacted as a completed whole, at one and the same time. Long before the added provision, relied upon by the plaintiffs, became a law, other provisions, now contained in section 249, were present in former section 144. These provisions, standing alone, sanctioned a presumption from a deposit in the statutory form, although not a conclusive presumption, that a transfer of an interest in the funds deposited was intended and had been effectuated. It was so held in *Clary* v. *Fitzgerald* (*supra*), a case decided before the added provision was enacted. That case, since it dealt with substantially identical provisions, is a definite authority that the provisions of section 249, other than the added provision, are effective to establish a transfer.

Laying aside the additional provision, we find that section 249 in terms declares that, where a deposit is made by one person in his name and that of another person, payable to either or the survivor, the deposit and any additions thereto " shall become the property of such persons as joint tenants;" that they "shall be held for the exclusive use of such persons;" that they " may be paid to either during the lifetime of both or to the survivor after the death of one of them."

When the Legislature has used a term having a well-defined legal meaning, such as the term " joint tenants," we must assume that it has advisedly employed it to express the meaning commonly attributed thereto. " Joint tenants, by reason of the combination of entirety of interest with the power of transferring in equal shares,

are said to be seized *per my et per tout,* or by the half *and* the whole, but tenants by the entirety are seized *per tout et non per my,* and the conveyance by either husband or wife will have no effect against the other if survivor." (Per POUND, J., in *Matter of Mc Kelway,* 221 N. Y. 15, 19.) It was there held that a surviving joint tenant, as to at least one-half of the joint property, was its owner from the date of the creation of the tenancy. " It is the fundamental principle of a joint tenancy, that while the parties constitute but one person, so to speak, as far as the rest of the world is concerned, with regard to themselves each is entitled to an equal share of the rents, income, and profits, so long as he lives." (Schouler Pers. Prop. [5th ed.] 224.) Not merely did the Legislature use the term " joint tenants; " it provided that after the creation of the deposit, the funds deposited, together with all dividends thereon, should be held for the exclusive use of the joint depositors. It could not better have indicated that the term " joint tenants," as used by it, was intended to possess that technical meaning which is accorded to it by the legal profession. Assuming that, upon the making of the deposits by Fannie Manheimer, in the joint names of herself and Pearl Harris, the two become " joint tenants," it is immaterial whether Pearl Harris then acquired an interest in a moiety or an interest in the whole of the funds deposited. If she received the former, rather than the latter, to that extent at least the deposit was irrevocable, since she had acquired a vested property interest. Even if Fannie Manheimer possessed the power, by transferring her interest to another, thereby to sever the joint tenancy, and prevent survivorship, in fact this was never done, so that the title to the balance would have passed to Pearl Harris, as survivor.

The plaintiffs reason that even though the deposits in the joint account, to the credit of Fannie Manheimer and Pearl Harris, payable to either or the survivor, con-

stituted a joint tenancy, the transfer possessed a tentative character and, not being completed until survivorship ensued, was meanwhile revocable by the original depositor. In support of this proposition they cite *Matter of Totten* (179 N. Y. 112); *Matter of Albrecht* (136 N. Y. 91), and *Matter of Kane* (246 N. Y. 498). These cases are wholly beside the point. In the *Totten* case the court dealt with a deposit made by one person of moneys owned by him to the credit of himself as trustee for another. It was held that the deposit created a tentative trust, revocable by the depositor before his death, but, if unrevoked, taking effect at his death to vest title in the surviving beneficiary. The case with which we are dealing has no similarity to the *Totten* case. Fannie Manheimer never declared herself to be a trustee for Pearl Harris or any other person. Therefore, no trust was created by her. (*Young* v. *Young*, 80 N. Y. 422.) In the other two cases the subject considered was either the purchase of securities by a husband with moneys of his own, or the deposit of such moneys, in the joint names of himself and wife. It was held that such a transfer possessed all the essential qualities of a gift *causa mortis*, and was revocable by the husband before his death. This rule presents an exception if not an anomaly in the law of property, and is applicable only in the case of a gift by a husband to his wife of property or moneys belonging solely to himself. (*West* v. *McCullough*, 123 App. Div. 846; 194 N. Y. 518; *Matter of Kane, supra.*) In such an instance the husband and wife never become joint tenants in the true sense. Thus, in *Matter of Kane* it was said: "The cases hold, it is true, that a husband who puts the title to a chose in action in the name of himself and his wife jointly does not create a joint tenancy in the strict sense." In our case, by force of the statutory presumption, if not rebutted, Fannie Manheimer and Pearl Harris became true "joint tenants." To say that they became joint tenants through survivorship only is

to state an absurdity. Certainly the law has never indulged in the fiction that a joint tenancy between two persons may arise after the death of one person, when only one survives.

The case of *Matter of Tilley* (166 App. Div. 240; affd., 215 N. Y. 702) is a definite authority to the effect that a true joint tenancy, between Fannie Manheimer and Pearl Harris, arose at the moment when the deposits were made. In that case moneys had been deposited in a savings bank to the joint credit of the depositor and another person "payable to either of them, or to the survivor." It was held that on the death of the original depositor no transfer to the survivor took place which was taxable, under an amendment to the Tax Law (Cons. Laws, ch. 60) which made taxable any transfer "made in contemplation of the death of the grantor, vendor or donor or intended to take effect in possession or enjoyment at or after such death." (Laws of 1911, chap. 732, § 220, par. 4.) The court held that, under the provisions of section 144 of the Banking Law, which were then in force, the depositor, when he made the deposit, "vested the ownership of such funds in joint tenancy in himself" and the other person. It further said: "The possession is given upon the creation of the estate; the rights are absolutely and conclusively fixed, and the only question which is contingent is which of two or more joint tenants shall eventually own the entire estate. But each is in full possession, each has full ownership as against all the world, with the exception of the equal right of the others, and the transfer which becomes fully determined at the death of one of two joint owners relates back to the creation of the estate. It was then that the rights vested, and the death only determines which shall be the gainer by the transaction."

The Tax Law, as presently written, in section 220, subdivision 5, provides that where moneys are deposited in banks "in the joint names of two or more persons and

payable to either or the survivor," upon the death of one of such persons the right of the surviving joint tenant " to the immediate ownership or possession and enjoyment of such property, shall be deemed a transfer taxable under the provisions of this article " in the same manner as though " a fractional part of the property to be determined by dividing the value of the entire property by the number of joint tenants " belonged " absolutely to the deceased joint tenant " and " had been bequeathed to the surviving tenant." It will be observed that a tax may be imposed only upon the additional sum which comes to the joint tenant through his survivorship; none may be imposed upon his remaining share. Here is express legislative recognition of the fact that where a deposit is made in the joint names of two persons, payable to either or the survivor, there is, under the provisions of section 249 of the Banking Law, an immediate transfer of an interest in the fund, so that at the death of one of the tenants the survivor is taxable, not for the moiety which came to him on the creation of the joint tenancy, but only for the moiety received from his joint tenant through survivorship.

In *O'Connor* v. *Dunnigan* (158 App. Div. 334; affd., 213 N. Y. 676) the facts were that a man and his wife, Mary Guilfoyle and Joseph Guilfoyle, deposited moneys in a bank to an account which read " Mary Guilfoyle or Joseph Guilfoyle. Pay to either or the survivor of either." Mary withdrew all the moneys and deposited them in a bank to her individual credit. Three days afterwards Mary died. This action was brought by Joseph against the executors of the will of Mary Guilfoyle to recover the moneys withdrawn. A recovery of all the moneys was decreed. It was not shown to what extent the original deposits had been made by Joseph and to what extent by Mary. If the plaintiffs' contention that the form of the account, in which the two made deposits, evidenced a tentative transfer only, which

was subject to revocation by the one making the deposit, was correct, then the recovery should have been limited to the amounts deposited by Joseph Guilfoyle. The court held otherwise, saying: " It cannot matter whether the moneys originally came from Joseph Guilfoyle or Mary Guilfoyle. The form of the deposit indicated an intent thereby to create a joint ownership with the right of survivorship." It further said: " It would be pre- posterous to claim that an appropriation of personal property by one joint owner to his personal use could divest the interest of the other joint owner." This case dealt with deposits made long before the adoption of former section 144 of the Banking Law. It was decided upon common-law principles without reference to the provisions of that section which had been enacted prior to the decision. It is important upon this issue, however, as a holding that a joint tenancy, which may result from a deposit in joint account, is a true joint tenancy, the transfers involved in the creation of which are irrevocable at the instance of either depositor, to the extent of the funds by him deposited. If this be true of common-law deposits to joint account, it must be equally true of deposits made under the provisions of the statute.

One more argument of the plaintiffs, favoring revoca- bility, must be considered. They call attention to that provision of section 249 which exempts a savings bank from liability for all payments made from the joint account · " prior to the receipt by said savings bank of notice in writing not to pay such deposit in accordance with the terms thereof." This provision was borrowed from former section 144 which, with the exception that " savings bank " there appeared as " bank," employed the identical words quoted. The plaintiffs reason that the giving of a " notice " thereby sanctioned is the giving of a notice of cancellation or revocation by the original depositor. The provisions of former section 144, including the provision in question, were distributed, by the new

Banking Law of 1914, not only to section 249, but to new sections 148 and 198 as well. In these new sections, the particular provision of section 144, the reproduction of which in section 249 is now relied upon, reappears as a provision for exemption of a " bank " or " trust company," for payments made prior to the receipt of " notice in writing signed by any one of such joint tenants, not to pay such deposit in accordance with the terms thereof." Thus, in the instances of a " bank " and a " trust company," the notice might be given either by the original depositor or by the person who became joint tenant of the fund through the transfer involved in the making of the deposit. Clearly, a notice of revocation of the transfer could not be made by a person other than the transferror. It must be concluded, therefore, that the notice provided for in these sections is not a notice of revocation or cancellation. If that be true, it must be equally true of the notice provided for in section 249. Certainly, it cannot be supposed that the Legislature intended that deposits made under sections 148 and 198 should be irrevocable, and those made under section 249 should be revocable. Indeed, the provisions of the last section are less restrictive than those of the former. In the one the notice may be given by any person; in the other two it must be given by one of the joint tenants. Self-evidently, the notice provided for was merely one the effect of which should be to withdraw from the bank of deposit the immunity granted by the statute, so that thereafter all payments made by it would be subject to the risk that the person paid was not entitled thereto.

It is said that if we interpret the provisions of section 249, other than the added provision, to work an irrevocable transfer, we deprive the added provision of any force whatever. The retort might be made that the converse would result, if to the added provision alone such a transfer were made attributable; the other and

earlier provisions would then be meaningless. But there is a better answer. The other provisions may be regarded as creating a rebuttable presumption of the making of a transfer; the added provision as creating an irrebuttable presumption, or " conclusive evidence," as the provision itself states, of an effective transfer, in cases of survivorship only. By so interpreting the section all its parts would be given force and effect. We think that is the interpretation properly to be given.

We think, for all these reasons, that Fannie Manheimer, in originally making the joint deposits, transferred to Pearl Harris a present property interest in the moneys deposited, which was not subject to cancellation, at the instance of Fannie Manheimer, and was not destroyed or in the least affected by the notice not to pay which Fannie Manheimer served upon the banks.

The judgment of the Appellate Division and that of the Special Term should be reversed and the complaint dismissed, with costs to the defendant in all the courts.

CARDOZO, Ch. J. (concurring). The case hinges upon the meaning of a section of the Banking Law (§ 249, subd. 3), which, though often considered in other courts, has not yet been construed by this court in an authoritative way.

The statute, as I view it, does not mean that between the persons named as depositors a joint tenancy ensues at once and automatically, as an irrebuttable presumption, with the result that neither will be permitted even during the joint lives to prove against the other that the deposit was made with a contrary intention. For the bank which has paid, the form of the account is, indeed, an absolute protection, unless written notice has been given by either one of the depositors (cf. Banking Law, §§ 148, 198) " not to pay such deposit in accordance with the terms thereof." For the depositors themselves, the form is not conclusive in any contest during their

joint lives as to the title to the moneys, nor conclusive after the death of either as to moneys then withdrawn.

The final sentence of the section, added by amendment in 1914, is a gloss upon its meaning. " The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor." The sentence is as significant for what it omits as for what it says. There is no statement that the form is to be taken as conclusive evidence in any action or proceeding to which *either* depositor is a party. It is to be conclusive evidence only in an action or proceeding in which the bank or the *surviving* depositor is a party. Even then it is to be conclusive in favor of the survivor, not in respect of any moneys withdrawn by either during life, but as to succession by survivorship in respect of any moneys forming part of the deposit after one of them is dead. The plain implication is that as between the depositors themselves, the form of the deposit gives rise to a presumption and nothing more, but that after the death of either leaving a deposit then subsisting, the presumption becomes conclusive as to the title of the survivor.

A reading of the statute that would make the presumption irrebuttable except within these limits would do violence to intention and foster litigation. It would do violence to intention, for those who open such accounts have seldom any thought of restricting their enjoyment of the fund, their right to draw and spend, by the shackles of a formula (cf. *Beaver* v. *Beaver*, 117 N. Y. 421). It would foster litigation, for each of the two depositors, the one opening the deposit as fully as the other, would be subject to an accounting for moneys afterwards withdrawn, and forced to make division on the footing of equality. An irrebuttable presumption would close the

door to testimony, direct or circumstantial, that in opening the deposit the incidents of a joint tenancy had been varied by agreement. Many a family settlement, made in the informal fashion to be expected among relatives, would be opened up for scrutiny after years of acquiescence.

The possibilities of injustice inherent in a changeless formula have illustration in the case before us. In April, 1924, at the opening of the joint accounts, the depositor, Fannie Manheimer, was blind and infirm. Her disability is at least a circumstance pointing to the inference that she was to have the right during her life to use the money as she pleased. She became a little later a sufferer from cancer. If at once and automatically a joint tenancy arose as an irrebuttable presumption, she would have been subject to a suit by her granddaughter if she had drawn and spent more than half of the deposits in an attempt to mitigate her agony. The court must have declined to listen to her protest that in opening the accounts she had reserved to herself the privilege of user. Every joint depositor in that view must keep the drafts for his own use within the limits of his moiety, though dominion was retained at the time of the successive deposits by agreement the most explicit. The agreement will avail for nothing if he is summoned to account.

I am persuaded that the statute did not envisage that result. There had been a ruling by this court in *Kelly* v. *Beers* (194 N. Y. 49) that a deposit by one in the name of himself and another or the survivor, was unavailing in and of itself to give to the other any interest whatever, either conclusive or presumptive. The intention thus revealed was thought to be abortive in default of evidence of the delivery essential to a gift. The aim of the statute superseding that decision was not to cramp intention, but to give it power to prevail. Capacity was to be liberated, not cabined or confined. Bank accounts in this form are opened not infrequently by the simple

and the humble. The last thing that was in view was to encompass them with new embarrassments, to penalize their ignorance. What was sought and what was needed was to let them carry out their will. There was to be flexibility and simplicity, not rigidity and formalism, in an adjustment between means and ends. A presumption, to be sure, there is that the form of the deposit, unqualified by agreement, is an accurate expression of the realities of title. The presumption is no longer subject to be rebutted — the form, in the words of the statute, becomes " conclusive evidence " of the intention — when one of the depositors dies with the deposit still intact. But except after death, or in circumstances where prejudice would result to a bank acting without written notice of a countervailing interest, the true agreement may be proved, though in proving it there is a departure from the terms of the presumption. Even the bank is not protected in its payments to the same extent or in the same circumstances that protection would result if the deposit were a joint tenancy in every sense and for every purpose. It is protected in the absence of written notice that it is " not to pay such deposit in accordance with the terms thereof." When such a notice is given and a contest in the courts ensues during the joint lives of the depositors, distribution is to be determined, not solely by the terms of the deposit, which then cease to be conclusive, but by the realities of ownership.

Nothing in our decisions is in conflict with these views. *Clary* v. *Fitzgerald* (155 App. Div. 659; 213 N. Y. 696) was a case where the deposit was intact at the death of a depositor. The survivor had the benefit of the statutory presumption, there being nothing to rebut it. The case was decided without opinion in this court. The opinion at the Appellate Division has a pointed statement to the effect that for anything there held the form of the deposit, though conclusive as to the bank, is not conclusive as between the depositors who may litigate *inter se*

the nature of the tenancy (155 App. Div. 664). The provision of the statute whereby the form has been made conclusive as to the right of the survivor was added to the section later. *Matter of Tilley* (166 App. Div. 240; affd., without opinion, 215 N. Y. 702) was a case under the Tax Law. There, as in *Clary* v. *Fitzgerald*, the presumption was untouched by any evidence that tended to destroy it. *O'Connor* v. *Dunnigan* (158 App. Div. 334; affd., without opinion, 213 N. Y. 676) was a case at common law, the deposit having been made before the statute was enacted. A later judgment in the Fourth Department (*Scanlan* v. *Meehan*, 216 App. Div. 591) sustains the right of the depositors to litigate the incidents of the tenancy in suits between themselves.

The foregoing statement of the effect of a deposit in the statutory form during the joint lives of the depositors has been necessary to avoid misapprehension as to the scope of our decision. The controversy at hand, however, is one where the depositor opening the account has died, with the account in the joint names still open and intact, and the only question to be determined is the title of the survivor. In such a case the statute says that the form shall be conclusive, and not merely presumptive, evidence of the intention of each that the survivor is to have the whole. The tenancy, if joint in its creation, was not destroyed by revocation (cf. *Kelly* v. *Beers*, *supra*, at p. 58). If the form of the deposit was an expression of the true agreement, there could be no change of ownership thereafter by an *ex parte* declaration. As to what the true agreement was, the door to controversy was open during the joint lives of the depositors. It was closed upon the death of either. The question is not here whether a like result would follow if a suit to establish an agreement at war with the presumption had then been pending undetermined. A notice of revocation is not a notice of *lis pendens*.

I have said that the joint account, if created with the

usual incidents, was not destroyed by the announcement of an intention to revoke it. Whatever quality the deposit had, it had from the beginning. So long as the creation of a joint tenancy was a presumption and nothing more, the incidents of the tenancy might be varied by evidence, direct or circumstantial, of intention or agreement. The intention of one of the two depositors might bring about the variance if only one of the two was a party to the transaction. The assent of each might be essential if the deposit was so made as to be equivalent to the act of both. In either event, notice of revocation was effective only to the extent that it was consistent with rights theretofore reserved. It was evidence only to the extent that it cast light upon the past. To put it differently, title to the accounts was unaffected by the notice of withdrawal in the absence of a showing that by implication, if not otherwise, the privilege of withdrawal was one of the terms of the deposit. Such a showing was permissible during the joint lives, for it was then opposed by nothing except a presumption to the contrary. It was no longer permissible after either depositor was dead, for it was then opposed by a presumption declared to be conclusive.

The result thus reached makes it needless to consider whether the evidence sustains a finding that by intention or agreement the incidents of a joint tenancy were to be lacking altogether. The fact that Mrs. Manheimer was blind and infirm gives color of support to the inference that she was not depriving herself of the right to make use of the money as she might need it for maintenance or cure. On the other hand, there is little, if anything, to indicate that in opening the accounts she did so with the understanding that as to moneys left there at her death, the right of succession by survivorship was to be lost to the survivor. Elaboration is unnecessary, for the statute gives the rule.

What is true of the accounts as to which notice of revocation was outstanding at the time of death is true the more plainly of those where the notice was withdrawn, and the deposits re-established in accordance with the statute.

The judgment of the Appellate Division and that of the Special Term should be reversed, and the complaint. dismissed, with costs to the defendant in all the courts.

POUND, CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur in opinions of KELLOGG, J., and CARDOZO, Ch. J.

Judgments reversed, etc.