JOSEPH SCHULTZ, Plaintiff, *v.* DRY DOCK SAVINGS INSTITUTION, Defendant, ANNIE SCHULTZ, Added Defendant.

City Court of New York, Bronx County, December, 1929.

*Solomon H. Bauch* [*David L. Cohn* of counsel], for the plaintiff.

*Philip Cooper*, for the defendant Annie Schultz.

*Frank M. Tichenor*, for the defendant Dry Dock Savings Institution.

DONNELLY, J. Husband and wife seek an adjudication as to the ownership of certain funds deposited in the Dry Dock Savings Institution. The first deposit was made May 17, 1918; the last, July 19, 1919. Since the opening of the account the pass book has remained in the husband's possession. Some time after the latter date, the husband and wife separated and have been living apart ever since. The account thus opened reads: "Joseph Schultz or Annie Schultz, payable to either or to the survivor." The husband claims the moneys so deposited belong to him. He testified they are what he was able to save out of his earnings after defraying the household and his personal expenses. The wife declares the moneys are her individual property. She testified they came partly from her savings out of the allowance given to her by her husband to run the household; partly from her earnings as dressmaker, and in part various sums given to her from time to time by her brother-in-law in payment of a debt. I find that the moneys so deposited were the husband's and that, when he opened the account, he did so, as he then and there expressly stated to his wife, for the sake of convenience merely, and not with the intention of creating a joint ownership of the funds in himself and his wife, his declaration being that his hours of labor would not permit him to make the deposits in person.

The contention of counsel for Mrs. Schultz, that, under subdivision 3 of section 249 of the Banking Law (Laws of 1914, chap. 369), when an account is opened in a savings bank in the form and in the manner in which it was here, a conclusive presumption arises of the intention of the one who opened the account to create a joint ownership of the funds, cannot be upheld. The statute reads: "3. When a deposit shall be made by any person in the names of such depositor and another person and in form to be paid to either or the survivor of them, such deposit and any additions thereto made by either of such persons after the making thereof, shall become the property of such persons as joint tenants, and the same together with all dividends thereon shall be held for the exclusive use of such persons and may be paid to either during the lifetime of both or to the survivor after the death of one of them, and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to such savings bank for all payments made on account of such

deposit prior to the receipt by such savings bank of notice in writing not to pay such deposit in accordance with the terms thereof. The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor.''

It is difficult to understand why provision should have been made in the statute for the release and discharge of the savings bank that makes payment on account of such deposit prior to its receipt of written notice not to pay, unless opportunity to the depositor who opened the account to show that he did not intend an irrevocable joint tenancy, be taken to be the plain implication, even though the written notice of itself may not constitute a revocation. This part of the statute was not enacted for the exclusive purpose of protecting the bank with which the deposit was made in making payments to the depositors from the fund. It was also intended for the purpose of determining the property rights and relations of the depositors in the fund so deposited. This part of the statute was mere surplusage, if the purpose of the statute is to be limited only to prescribing to whom and under what conditions the bank might safely pay such deposits. (*Clary* v. *Fitzgerald*, 155 App. Div. 659, 663, 664; affd., 213 N. Y. 696.) The last sentence of the statute provides that, in any action or proceeding to which the savings bank *or the surviving depositor* is a party, the making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence of the intention of both depositors to vest title in such deposit and the additions thereto in such survivor. This language seems to me to be likewise implicit of an intention to give a living depositor the chance to prove his real purpose in making a deposit in such form. Reading the statute as a whole, and giving effect to every part of it, it seems to me that the results which flow from it are, that where the depositor dies leaving the account in the form in which the account was opened here, an irrebuttable presumption arises that it was his intention to create a joint tenancy between himself and the other party to the funds so deposited. But, where both parties to the account are living, the presumption may yield to proof of a contrary intention. These views are sustained by the very recent decision in *Moskowitz* v. *Marrow* (251 N. Y. 380).

Judgment for plaintiff. Submit findings and decree, with two days' notice of settlement.