In the Matter of the Estate of MICHAEL CURRAN, Deceased.

Surrogate's Court, Kings County, December 5, 1934.

*James H. Gilvarry,* for the executor.

*William M. Perlman,* for Mary G. Curran.

*Floyd J. Egan,* for Mary A. Curran and another.

*Angelo John Cincotta,* for Della Curran Viola.

*Feiger & Feiger,* for Dora Lipsky, judgment creditor of Mary A. Curran and another.

*Emil N. Baar,* referee.

WINGATE, S. The issue in this discovery proceeding relates to the rights of a surviving wife, Mary G. Curran, in certain savings bank accounts which were opened by the decedent with his own money and which at the time of his death stood to the credit of " Michael Curran or Mary G. Curran, Pay to Either or Survivor." The accounts were opened on or about August 19, 1931, in that form, and the books delivered to the decedent. The usual inference resulting from such a delivery, of understanding by the depositor of the nature of the deposit, does not arise in the present case, as he was blind.

At the time the accounts were opened, the only persons present, in addition to the several bank officials and the decedent, were his wife and an attorney by the name of Jones, whose connection with the matter was demonstrated to have been merely friendly and not in any professional capacity.

It was established by the testimony of representatives of the several banks with whom the transactions took place that the accounts were originally opened in the survivorship form, but their evidence was based solely on the records of the respective banks. None had any personal recollections of the particular events which transpired, their relation of occurrences being predicated only on their customary practice in such matters as fortified by the records which they made at the time.

Mr. Jones testified to participation in parts of the events of the inception of the accounts but expressly stated that he did not hear all that was said. Nothing of any direct bearing upon the conversations between the decedent and the bank officials was elicited from the widow.

Shortly prior to the opening of the accounts, the decedent had expressed to Mr. Jones his intention " to put " his wife's " name on the books."

By reason of the provisions of subdivision 3 of section 249 of the Banking Law, as interpreted in the controlling decisions in *Moskowitz* v. *Marrow* (251 N. Y. 380); *Marrow* v. *Moskowitz* (255 id. 219) and *Matter of Porianda* (256 id. 423), a conclusive presumption, amounting to a rule of substantive law, arises on the death of one of two joint tenants of a bank account in statutory survivorship form, that the survivor, on the death of the other, takes absolute title to the balance in such an account. (*Matter of Hill*, 145 Misc. 631.) The only exception to this rule is that expressly stated in the language of the statute, namely, where the opening of the account in the statutory form was the result " of fraud or undue influence."

As this court observed in *Matter of Timko* (150 Misc. 701, 705), " the fraud or undue influence which, under the wording of the statute, will effect an avoidance of the presumption which it creates, must bear some direct relation to the account itself," and must be proved by the person alleging their perpetration.

The learned referee has concluded that such invalidating fraud was here present, but none of the points noted in his comprehensive report, nor any testimony which the court has been able to discover in its reading of the absurdly voluminous record of 444 pages, in any wise support his conclusion.

That the decedent may have intended that the accounts were to be merely convenience accounts may be so as a fact, but the result of his acts, transacted individually by him with the representatives of the several banks, plus the statutory rule resulting from his acts, foreclose the possibility of inquiry into this subject.

The referee notes that the widow " produced no witness who testified definitely that the testator had made any statement within their hearing to the effect that he was making the transfer so that the funds would go to his wife upon his death." Why should she? When it was demonstrated that the accounts were in statutory form, that the decedent had died and she had survived, her case was proved. There was no necessity for her to say or do another thing. By virtue of the applicable law, title became vested in her and was subject to divestment only upon affirmative proof by her opponents that the transaction of opening the accounts in the demonstrated form was the result of fraud or undue influence practiced upon the decedent.

The only persons who had anything to do with the events of opening, aside from the decedent, were the widow, Mr. Jones and the employees of the respective banks. The last named may automatically be eliminated. Undue influence by them is inconceivable. The only " fraud " which they might conceivably have practiced, if it may be so termed, is a constructive fraud, presumably due to

mistake in opening the accounts in a form varying from the instructions of the decedent. Since, however, the three independent employees of the several banks did exactly the same thing in this regard, the inference is strong that they followed the directions of decedent in each case. This inference is, in reality, merely another fortifying circumstance to the result already attained, since, to overturn it, proof to the contrary would be requisite.

It is obvious from the record that Jones played no active role in the events of the day, and no one contends that he committed any of the invalidating acts prerequisite to a determination that the statutory devolution has not taken place.

This leaves the acts of the widow alone for consideration. A reading of the testimony does not demonstrate that she took any part in the transactions substantially more active than that of Mr. Jones. Certainly there is not a scintilla of evidence of any act by her which by the wildest flight of imagination could be designated as fraud or undue influence.

Perhaps she made conflicting statements. This might well impair her credibility as a witness, but her right to recovery does not rest on her testimony. The fact that the referee may deem her an untrustworthy prevaricator does not supply the complete absence of affirmative proof required if her opponents are to succeed. It is true, she was a second wife. This does not make her an object of suspicion. She quarreled with decedent's children by a former marriage. The statute fails to include this as one of the grounds for forfeiture of her rights. It is said that she drank to excess and failed to keep the house clean, etc., etc. These facts were developed over the absurdly prolix record *ad infinitum et ad nauseum*. They were wholly irrelevant and absolutely immaterial. The sole pertinent question on the hearing was: Did she or any one else do any act or series of acts which tricked the decedent into the opening of these accounts in the manner in which they were opened or overcame his free volition in this regard? Nothing remotely indicating an affirmation of this question was demonstrated; wherefore " the statute drops the curtain on all acts, other than the actual opening of the account, which occurred prior to her death, and the unanimous judgment of the final judicial authority of the State inhibits its being raised." (*Matter of Hill*, 145 Misc. 631, 633.)

For the reasons given, the findings and decision of the referee will be reversed and it is determined that the balances at the date of death in the several joint accounts in issue were the sole property of the widow.

Enter decree on notice accordingly.