John D. Bennett, S.
This is a proceeding by the petitioner, Ruth S. Spund, against the executor pursuant to section 206-a of the Surrogate’s Court Act to recover the proceeds of two joint accounts in Federal savings and loan associations, totaling the sum of $20,000.
The decedent at the time of her death on April 16, 1960 was about 83 years of age. She and the petitioner had maintained a very close relationship for more than 12 years prior to her death. Subsequent to the death of decedent’s husband, the decedent entrusted to Mrs. Spund the management of many, if not all, of her financial affairs.
*537 In April, 1959 the decedent executed a general power of attorney in favor of petitioner and the petitioner opened a checking account with this power of attorney, in the name of the decedent, in the Meadow Brook National Bank. Thereafter deposits were regularly made by petitioner pursuant to the direction of the decedent, and checks were drawn for the decedent by the petitioner at her direction and signed by the decedent. Other services such as the purchase of clothes and various items were taken care of by the petitioner. The general care of the house and of the decedent herself, who suffered from a serious heart condition and was somewhat restricted in her movements, were entrusted to a Mrs. Shea, a private nurse retained shortly after the death of the decedent’s husband.
During the year 1959, the decedent decided to dispose of the large home where she resided. The petitioner was instrumental in obtaining a purchaser, and $30,000 was realized on the sale of the house sometime in or about September of 1959.
From part of the proceeds of the sale two joint savings accounts were opened, each in the amount of $10,000. The actual physical making of the deposits was accomplished by the petitioner. One account was opened by her in the Baldwin-Bellmore Federal Savings and Loan Association, Account No. 24731, on September 14,1959 and the other was opened in the South Shore Federal Savings and Loan Association, Account No. 27997, on September 15,1959.
The signature card for Account No. 27997 contains both the signature of the petitioner and the decedent. Attached to it is a bank form of power of attorney with regard to such account, which was signed by the decedent in the presence of the petitioner’s father. The ledger account for Account No. 24731 contains a handwritten statement on the bottom thereof to the effect that a power of attorney was presented to a bank employee and that a power of attorney card was to be completed, notarized and returned. However, no separate power of attorney card with regard to this account has been produced.
On cross-examination the petitioner was asked if the decedent had told her that she was not a beneficiary of the will executed by the decedent on July 3, 1959. The petitioner replied that the decedent had informed her that she was not mentioned in the will at the time the joint accounts were opened. Also under cross-examination she insisted that she carried out whatever instructions were given her, and that whatever she did, she did at the sole direction of the decedent. The petitioner verified that she had promised to take care of the decedent until she died whether or not decedent had any money.
*538 After the sale of the house, the decedent moved into the home of her nurse, Mrs. Shea. Petitioner continued for frequent visits and general ministering to the cares and wants of the decedent following this move.
According to the petitioner, during this period the decedent continued her interest in the reading of books, and her physical condition “ seemed alright ”. The death of the decedent was brought on shortly after the inception of a cold, which she caught in the Spring of I960. After the decedent’s death, the petitioner turned over the bankbooks and other effects of the decedent in her possession to the attorney for the estate at his request.
The petitioner contends that subdivision 1 of section 394 of the Banking Law is applicable to these two accounts and that, specifically, the last sentence of such subdivision creates a conclusive presumption that the petitioner is entitled to the proceeds of the two joint bank accounts.
The initial question presented is whether subdivision 1 of section 394 of the Banking Law applies only to savings and loan associations chartered by the State of New York, or also to Federal savings and loan associations, which type of institution is involved here. This question has been decided in this Department by a holding that the Federal savings and loan associations are controlled by such section (Matter of Glasser, 191 N. Y. S. 2d 751, affd. 13 A D 2d 680). The arguments and cases cited by the special guardian against such a holding were the same arguments and cases cited in the appellant’s brief to the Appellate Division in the Qlasser case.
The second argument made against the claim is that the petitioner has failed to sustain the burden of demonstrating that the accounts were knowingly and consciously created by the decedent. The case of Matter of Creekmore (1 N Y 2d 284), among others, is cited in support of this argument.
That portion of subdivision 1 of section 394 of the Banking Law which is relevant here, and refers to joint bank accounts payable to either or the survivor states: “ The issuance of such shares in such form shall in the absence of fraud or undue influence be conclusive evidence in any action or proceeding to which either such association or the surviving shareholder is a party, of the intention of both of such shareholders to vest title to such shares and the additions thereto in such survivor.” Subdivision 3 of section 239 of the Banking Law contains similar language, and is applicable to savings banks. This latter section has been construed as creating a conclusive presumption that upon the death of one depositor the survivor is entitled to the *539 amount then on deposit (Moskowitz v. Marrow, 251 N. Y. 380; Marrow v. Moskowitz, 255 N. Y. 219).
However, in Matter of Creekmore (supra), the Court of Appeals, because of the particular circumstances involved, held that the .survivor was required to demonstrate that the decedent knowingly and consciously created the joint accounts before the operation of the conclusive presumption could come into play. There the Court of Appeals said, at page 294: “ There is no mechanical formula whereby the existence of a requirement can be measured or standardized to supply evidence additional to the factum in order to sustain this burden. Physical or mental weakness, although not so far advanced as to destroy competency entirely or under all circumstances, may be held to require, in the judgment of the trier of the fact, some proof additional to formal execution to establish knowledge of what she was doing when she signed the instrument. An invalid may retain enough strength of mind or body to consummate a simple transaction, but suffer complete mental lapse where circumstances conspire to becloud a complex one. This is such a situation.”
Again in Matter of Bricker v. Krimer (13 N Y 2d 22) the Court of Appeals reiterated its holding in the Creekmore case to the effect that the survivor there was obliged to demonstrate that the joint accounts were knowingly and consciously created only because of the particular circumstances involved.
In this case there is no evidence that the decedent was in anywise incompetent, or under any restraint or misapprehension at the time she executed the signature cards which created the joint accounts in question. The evidence, on the contrary, indicates that the decedent, although suffering from a chronic heart condition was at all times mentally alert and sufficiently competent to transact a series of matters, including the execution of her will , in July, 1959 and the sale of her house in September, 1959, a short time before the joint accounts were opened up. Furthermore, even assuming some additional evidence besides the factum of the making of the accounts was required, the conversation between the decedent and the petitioner at the time of the opening of the joint accounts that she was not mentioned in the will is significant in the opinion of this court. The decedent was survived by no relations closer f.ha.-n nephews and two children of one nephew. These two children were provided for in the will. Also provided for in the will was Mrs. Shea, the private nurse, and other nonrelatives. It is likely the statement made by the decedent that the petitioner was not mentioned in the will was intended to be taken in connection with *540 her placing the petitioner in a position in which she would succeed to the proceeds of the joint accounts.
The court accordingly holds that petitioner is entitled to the proceeds of the two joint bank accounts mentioned above.
The motions made during the trial by the respondent are dismissed.