OPINION OF THE COURT
John M. Kuzdale, J.
This case involves a question of state law for which there is no binding precedent, to wit: in a turnover proceeding for a joint account, is a judgment creditor entitled to the entire amount on deposit or only half of that amount when the non-judgment debtor joint tenant has been properly served and defaults? The issue is not entirely a novel one, as there are a number of well-reasoned and superbly drawn decisions on point from the trial courts.
The facts here are straightforward. On November 19, 2007, a judgment was entered in favor of petitioner herein against respondent Christina Kawski in the amount of $14,328.71 plus interest. An information subpoena served on respondent bank disclosed the existence of a joint checking account in the names of “John R. Kawski and Christina Kawski” with a total on deposit of $3,068.34. On April 3, 2008, petitioner commenced this special proceeding pursuant to CPLR 5225 and 5227, seeking an order “directing payment by the bank respondent from said funds of an amount not in excess of that which may be necessary to wholly satisfy the judgment herein entered.” Service of the petition on both the judgment debtor joint tenant and the nonjudgment debtor joint tenant was made pursuant to CPLR 308 (4), commonly known as “affix and mail” service. Both joint tenants defaulted in appearance on the return date for the petition.
The battle lines have been drawn between two distinct schools of thought on the question of whether the nonjudgment debtor’s default per se is sufficient to entitle the court to award to the judgment creditor turnover of more than half the account. One line of cases holds that the judgment creditor is entitled to the entire account balance when the nonjudgment debtor has defaulted (see Ford Motor Credit Co. v Astoria Fed., 189 Misc 2d 475 [Nassau Dist Ct 2001, Fairgrieve, J.]; Rappaport, Steele & Co., P.C. v JPMorgan Chase Bank, N.A., 13 Misc 3d 1203[A], 2006 NY Slip Op 51657[U] [Nassau Dist Ct 2006, Fairgrieve, J.]; LR Credit 10, LLC v Welsh, 17 Misc 3d 1129[A], 2007 NY Slip *278 Op 52193[U] [Auburn City Ct 2007]). Reasoning that “[t]here is thus a need to balance the rebuttable presumption that each joint tenant owns half with the lack of opposition to an attempt to take more than half the account” (189 Misc 2d at 477), and that “[a] default in answering . . . establishes for liability purposes the allegations of the pleading (complaint or petition)” (id. at 476 [citation omitted]), the court in Ford held that “the default of the nondebtor cotenant in answering the special proceeding commenced pursuant to CPLR 5225 and 5227 adequately rebuts the presumption created by Banking Law § 675 and allows the judgment creditor to reach the whole account” (id. at 478). “To rule otherwise undermines the purpose of CPLR 5225 and 5227 to determine in an expeditious manner the rights of various parties to a bank account” (id.).
“The default of the nondebtor tenant establishes that he/she has no ownership interest; this is especially true when the non-judgment tenant is personally served and defaults in answering the allegations of the petition” (id. at 477), observed the court in Ford. The importance of personal service to the Ford rationale was alluded to again in LR Credit 10, where “[a] 11 respondents were properly served, with [the nonjudgment debt- or] being personally served” (2007 NY Slip Op 52193[U], *1). Whether Judge Fairgrieve was signaling a departure from the personal service factor in Rappaport is unclear. There, it was simply noted that “both the respondent judgment debtor and the respondent non-judgment co-tenant were properly served with the turnover application” (2006 NY Slip Op 51657[U], *1).
Another line of cases holds that the nonjudgment debtor cotenant’s default is not alone sufficient to overcome the rebuttable presumption of equal ownership or of equality, and that the judgment creditor must come forward with proof to rebut the presumption (Mendel v Chervanyou, 147 Misc 2d 1056 [Civ Ct, Kings County 1990]; State of New York v Republic Bank for Sav., NYLJ, Aug. 8, 1994, at 28, col 4; Direct Merchants Credit Card Bank v Greenpoint Bank, 2003 NY Slip Op 50784[U] [Nassau Dist Ct 2003, Gartner, J.]; Amalgamated Bank of N.Y. v Germain, 2 Misc 3d 1010[A], 2004 NY Slip Op 50242[U] [Nassau Dist Ct 2004, Miller, J.]).
In Mendel, the court held that “the nonappearance of the nonjudgment debtor tenant while obviously diminishing the amount of proof needed does not by itself constitute rebuttal of the presumption” (147 Misc 2d at 1060). The presumption of equal ownership was derived from the application of “two *279 presumptions which apply to such joint accounts” {id. at 1058). “One is that each tenant is said to be possessed of the whole account . . . [t]he other is that the opening of the account creates a presumption that each of the parties is entitled to half the account” {id. at 1058-1059). The net effect of these two presumptions is that “if each tenant is said to be possessed of the whole, it is eminently reasonable to conclude that each is presumed to be entitled to half’ {id. at 1059). In holding that the nonjudgment debtor tenant’s default was not sufficient to overcome the presumption, the court reasoned that “the burden of proof lies on the one seeking to set aside the presumption, i.e., the judgment creditor” {id. at 1060 [citation omitted]).
In Direct Merchants, the court observed that
“the rebuttable presumption that each named tenant is possessed of the whole of the account ‘make[s] the account vulnerable to the levy of a money judgment by the judgment creditor of one of the joint tenants . . . ,’ but ‘[e]ven where a joint account is vulnerable to the levy of a money judgment as against one joint tenant, such a levy is effective only as to the actual interest of that judgment debtor in the account’ ” (2003 NY Slip Op 50784[U], *2, quoting Viggiano v Viggiano, 136 AD2d 630, 630-631 [2d Dept 1988]).
The court raised a question about the “actual interest” of the judgment debtor, but stopped short of suggesting an answer (id.). Reasoning that “[w]hile a default constitutes an admission of allegations in the pleading commencing the proceeding, . . . fit does not admit legal conclusions which are reserved for the court’s determination’ ” (id. at *3, quoting Silberstein v Presbyterian Hosp. in City of N.Y., 95 AD2d 773, 774 [2d Dept 1983]), the court concluded that “[t]he petitioner . . . has not provided this Court with any evidence demonstrating that the non-judgment debtor respondent is not entitled to her presumptive one half of the funds on deposit” (id. at *2).
In Amalgamated Bank, the court took Direct Merchants’ reasoning as to the limited effect of the nonjudgment debtor respondent’s default a step further. Citing CPLR 3215 (f), the court held that “to rebut the long-standing presumption of 50/50 ownership, there must be a verification . . . , based on personal knowledge, to establish that the judgment debtor has a disproportionate ownership in the restrained funds” (2004 NY Slip Op 50242[U], *2). The court added, “[t]hat is particularly true when service was made by substituted service, as it was in this case” (id.).
*280 Pursuant to CPLR 5225 (b), a court can only require the bank to turn over money “in which the judgment debtor has an interest” (emphasis added). Thus, the dispositive issue — the one that seemed to torment the courts in both Direct Merchants and Mendel — is the exact nature of the judgment debtor’s interest. Logically, if the judgment debtor has an interest in only half of the account, then it would seem to this court that regardless of the nonjudgment debtor respondent’s default, the judgment creditor should only be allowed to reach 50% of the funds in the account.
Nature of the Interest
It is well settled that a “deposit in the statutory form,” that is, in the names of the depositor and another person in form to be paid to either during the lifetime of both or to the survivor after the death of one of them, is “presumptive evidence of an intent to make a gift presently to take effect” (Moskowitz v Marrow, 251 NY 380, 387 [1929]). Prior to the passage in 1909 of Banking Law former § 144 (a predecessor to Banking Law § 675), the common-law rule was that a deposit in the names of the depositor and another person was “insufficient to establish a gift, by the former to the latter, of an interest in the funds deposited, to take effect either presently or in [the] future” {id. at 385 [citation omitted]). The Legislature’s purpose in enacting former section 144 was to “reverse the common-law rule” {id. at 387).
The enduring nature of the present gift is illustrated by Marrow v Moskowitz (255 NY 219 [1931]), where the Court of Appeals (Cardozo, Ch. J.) held that even after the initial depositor closed the joint account by withdrawing the entire fund and depositing it in a new account opened in her own name, “[t]he withdrawal did not destroy the joint tenancy or the title of the survivor, if a joint tenancy had been created” {id. at 221-222). After the death of the initial depositor, the cotenant brought an action against the executors of the estate of the initial depositor seeking to recover the moneys withdrawn from the joint account. Although the withdrawal “open[ed] the door to competent evidence, if any was available, that the tenancy created at the opening of the account was in truth something different from the tenancy defined by the presumption” {id. at 222), the Court of Appeals said that the hearsay evidence offered by the defendants “in an attempt to neutralize the presumption” {id.) was properly rejected by the courts below.
*281 It is equally well settled that “[w]hen a joint tenancy is created, each joint tenant has the right as a joint owner of the bank account to withdraw a moiety (half) or less than a moiety for his own use and thus destroy the joint tenancy as to such withdrawals” (Matter of Bricker v Krimer, 13 NY2d 22, 27 [1963]). Furthermore, a “joint tenant who withdraws a sum in excess of his moiety is liable to the other joint tenant for the excess so withdrawn” (id.). Thus, by virtue of the present gift, “from the moment of the creation of a joint account, a present unconditional property interest in an undivided one half of the moneys deposited devolves upon each tenant” (Matter of Kleinberg v Heller, 38 NY2d 836, 840-841 [1976, Fuchsberg, J., concurring] [citation omitted]).
That the judgment debtor’s “actual interest” is limited to 50% of the moneys in the joint account, even when he or she was the sole depositor, draws further support from the Recommendation of the Law Revision Commission to the 1984 Legislature Relating to the Modification of the Joint Tenancy Concept in Connection with Joint Bank Accounts (1984 McKinney’s Session Laws of NY, at 2990, 3005-3011). In proposing certain amendments to section 675 of the Banking Law and the addition of a new article 13-F, the Law Revision Commission made the following commentary on the status of the law in 1984:
“The existing presumption found in section 675 as to the gift of one-half affects rights of creditors attempting to attach or levy against property of debtors. For example, O opens a statutory (§ 675) joint account in his name and X with a deposit of $10,000. C is a judgment creditor of O’s in the amount of $8,000. Upon discovery of the joint account, C attempts to levy against it. Under present law, the presumption operates to limit his levy to O’s moiety of $5,000. The burden of proving that there was no present gift to X is upon C. Assume though, that in the example above, C is a judgment creditor of X. The presumption here operates in favor of C, in the amount of $5,000.
“Under the statute proposed by the Commission, there would be no presumed gift of one-half and, in the example above, O would be the owner of the entire $10,000, subject to C’s levy. X’s creditors would have no rights against any amount in the account until O’s death with X surviving (assuming it *282 is a survivorship account). Any advantage or disadvantage to creditors under the proposed statute will depend upon whose creditors they are. The proposed statute would seem to be more equitable than the existing one because money deposited by O could no longer be seized by X’s creditors.
“The Commission recognizes that difficulties may be encountered by third party creditors in establishing the amounts of each depositor’s ownership interest. For this reason, the Commission proposes that, in the absence of proof of such ownership interest, the amount of the account subject to the claims of the creditor of any joint depositor ‘is the entire sum on deposit in the account.’ This will place the burden of proof of ownership on the depositors themselves. Thus, in the example above, if X’s creditor (C) attaches the O-X joint account, O or X must prove O’s sole ownership of the funds in the account in order to defeat C’s levy. This places the burden properly on the persons having easiest access to the financial records (e.g., cancelled checks, deposit receipts, deposit books and bank statements).” (Id. at 3005-3006.)
The Legislature’s failure to adopt the proposed amendment is persuasive evidence of the legislative intent (see Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151 [1987]) to maintain the 50% rule.
Public Policy Arguments
Although policy arguments have been made against the 50% rule (see Montag, Outside Counsel, Joint Tenancy and Turnover Petitions, NYLJ, Nov. 25, 2002, at 4, col 4), such arguments should yield to the “interest” analysis expressly required by the statute, as opposed to public policy arguments which are better left to the will of the Legislature. Furthermore, while at first blush these public policy arguments may seem persuasive, closer examination reveals a fundamentally flawed framework.
First, it has been argued that the 50% rule “undermines the purpose of CPLR 5225 and 5227 to determine in an expeditious manner the rights of various parties to a bank account” (Ford, 189 Misc 2d at 478). This court can discern no conceivable reason why a 50% rule would be any less expeditious than a 100% rule. Knowing the 50% rule in advance will enable creditors seeking more than the presumptive 50% to subpoena such wit *283 nesses and documentary evidence as may be needed to rebut the presumption of a gift. Alternatively, creditors may simply resign themselves to the 50% and, if that 50% is insufficient to satisfy the judgment, resort to any one or more of the other enforcement devices authorized by article 52 of the CPLR.
A second argument that is often made is that a 50% rule will work an injustice because such a rule will encourage account holders not to respond to the petition. As LR Credit 10 wisely observed, “it would be unlikely that the judgment debtor would be savvy enough to know the law and avoid creditors merely by placing his or her funds in a joint account” (2007 NY Slip Op 52193[U], *2). Furthermore, the flip side is that judgment creditors would, by a 100% rule, be placed in a better position than the judgment debtor in whose shoes the judgment creditor is standing. In an action between the judgment debtor and his cotenant in which either cotenant is suing for 100% of the account on the theory that the account “was in truth something different from the tenancy defined by the presumption” (Marrow v Moskowitz, 255 NY at 222), the plaintiff cotenant would be required to produce competent evidence, whereas a judgment creditor in a turnover proceeding could simply rely on the non-judgment debtor respondent’s default.
It is this court’s considered opinion that the 50% rule will do less violence to Moskowitz and its progeny and will avoid the dilemma confronting courts that follow Ford as to the effect of substituted service.
The “Showing” Requirement and CPLR 3215 (f)
CPLR 5225 (b) “provides for a two-step analysis in determining whether property belonging to a judgment debtor — but in the possession of a third party — should be turned over to a judgment creditor” (Beauvais v Allegiance Sec., Inc., 942 F2d 838, 840 [2d Cir 1991]). “First, it must be shown that the judgment debtor ‘has an interest’ in the property the creditor seeks to reach” (id.). Second, the trial court must “make one of two findings: it must find either that the judgment debtor is ‘entitled to the possession of such property,’ or it must find that ‘the judgment creditor’s rights to the property are superior’ to those of the party in whose possession it is” (id.).
As a matter of law, the opening of a joint account is prima facie evidence of an intention to create a joint tenancy (see Banking Law § 675 [b]) and, pursuant to Moskowitz and its progeny, prima facie evidence that the judgment debtor’s interest is *284 limited to 50% of the amount on deposit in the account, whether the nonjudgment debtor joint tenant is in default or not.
Under the Ford rationale, the court can make the necessary findings based solely upon the nonjudgment tenant’s default. This court suggests that Ford paints with too broad of a brush.
“While it is correct that a default constitutes an admission of the allegations of the petition, the question still remains of what evidence a court must require before a default judgment is entered. In the case of an ordinary complaint in a civil action, there must be an affidavit of a party verifying the essential elements of a claim before a default judgment can be entered. CPLR 3215(f). For the same reason, to rebut the long-standing presumption of 50/50 ownership, there must be a verification . . . , based on personal knowledge, to establish that the judgment debtor has a disproportionate ownership in the restrained funds” (Amalgamated Bank, 2004 NY Slip Op 50242[U], *2).
Since there is no provision in article 52 or article 4 of the CPLR that specifically addresses default, and since CPLR 5225 (b) specifically requires a “showing,” this court finds that CPLR 3215 (f) should apply (compare Worldwide Asset Purch., LLC v Karafotias, 9 Misc 3d 390 [2005] [the court held that an arbitration award may be confirmed upon default of the respondent only when the petitioner makes a prima facie showing with admissible evidence]; see Matter of Brusco v Braun, 84 NY2d 674, 681 [1994]). Furthermore, “on application for default judgment the submission must make a prima facie showing that the relief prayed for is warranted” Worldwide, 9 Misc 3d at 394 [citations omitted]).
Moreover, even if CPLR 3215 (f) does not apply, the question is whether petitioner’s allegations, which are deemed admitted by the default, are sufficient to overcome the prima facie evidence in favor of the nonjudgment debtor. Here, for instance, petitioner has alleged that the “Judgment Debtor Respondent is the owner of or entitled to the full and complete use and benefit of all funds in the account restrained herein.” First, petitioner must show both that the judgment debtor “has an interest” in all of the funds in the account and that the judgment debtor is “entitled to the possession of such property” (see Beauvais, 942 F2d at 840). Second, as Moskowitz and its progeny show, the fact that each joint tenant may have the right to withdraw all of the funds in the account does not mean that *285 each joint tenant owns 100% of the funds in the account or is entitled to possession of 100% of the funds in the account vis-avis the other cotenant. The phrase, “may be paid ... to either during the lifetime of both,” in subdivision (a) of Banking Law § 675 is “an absolute protection” given to banks (Moskowitz v Marrow, 251 NY at 396 [Cardozo, Ch. J., concurring]); it has no effect on the rights of each cotenant relative to each other.
Finally, the turnover petition in this case was not verified and was signed by petitioner’s attorney. Had the petition been verified, and had the verification been made by a person other than the party, CPLR 3021 would have required that the grounds of belief as to all matters “therein stated to be alleged on information and belief,” including petitioner’s assertion regarding the judgment debtor respondent’s ownership of or entitlement to the full and complete use of all funds in the account, be set forth in the affidavit of verification. In the court’s view, this underscores the fact that petitioner’s allegation regarding ownership of, or entitlement to, all the funds in the account is no more than a mere legal conclusion without any factual support. Legal conclusions are reserved for the court’s determination (Silberstein, supra).
Based on the foregoing, this court concludes that the judgment creditor petitioner is entitled to a turnover of no more than half of the funds in the account restrained herein.
Accordingly, respondent Lake Shore Savings & Loan is directed to turn over to petitioner’s counsel up to one half of the funds on deposit in the account, in partial satisfaction of the judgment in the sum of $14,328.71, within 10 days of service of this order with notice of entry.