LAURA J. NEWHOUSE, Respondent, *v.* ADRIANA HARRINCK, as Executrix, etc., of FRANK NEWHOUSE, Deceased, Appellant, Impleaded with THE UNION SAVINGS BANK OF PATCHOGUE, Defendant.

Second Department, November 22, 1929.

*Frederick W. Tuck, Jr.* [*Alfred E. Frieman* with him on the brief], for the appellant.

*Guy O. Walser,* for the respondent.

RICH, J. The defendant Frank Newhouse died while the above-entitled action was pending, and it was continued against his executrix. It had been brought by the wife of Newhouse to compel him to account for the proceeds of a savings bank account in the Union Savings Bank of Patchogue, which plaintiff alleged was opened in the following form: " Frank Newhouse and Laura J. Newhouse, payable to either or the survivor."

Decedent, a widower (seventy-nine years of age), and plaintiff, a widow (fifty-eight years of age), were married on November 1, 1927. It was Mrs. Newhouse's fourth matrimonial venture. The husband had on deposit on January 10, 1928, with the defendant

savings bank in his own name the sum of $2,311.66. He withdrew the money on that date and deposited it in a new account under the names of himself and the plaintiff payable as above stated, but retained the pass book. Plaintiff contributed nothing to the account. Mr. Newhouse withdrew the deposit on March 22, 1928, from the joint account and redeposited it in a new account in *his* own name, and $1,229.90 remained on deposit at the time of his death (February 27, 1929), in *his own name.* Plaintiff, upon being informed that her husband had withdrawn the money, wrote him a letter in which among other things she stated she did not wish any of his money, but subsequently instituted this action for an accounting, in which a temporary injunction was issued restraining the decedent and the bank from drawing, distributing or paying out more than half of the moneys on deposit to his credit.

The record discloses that decedent, in opposing the action and the motion for a temporary injunction, denied any intention of making a gift of one-half of the deposit to the plaintiff. Testifying to what occurred when the account was originally opened in the joint names, plaintiff said: " Q. What did he say he wanted you to go over to the bank for? A. To have my name put on the bank book. Q. Did you go to the bank with him? A. Yes, sir. Q. You and he together? A. Yes, sir. Q. Did you go into the bank building? A. Yes, sir. Q. Did you get the bank book there? A. Yes, sir. Q. Did he take the bank book with him? A. Yes, sir. Q. Did he show it to the bank officials? A. Yes, sir. Q. Did you hear him tell the cashier what he wanted to do? A. Yes, sir. Q. What did he say? A. He said half of the money was for me, in case of his death, he said it was all for me; but I could do — I could use the half of it. The president of the bank said to me, ' Mrs. Newhouse, any time you need money, you can come for it, because half of it belongs to you. In case of death you can take it all, and you can take it away.' "

The trial court decided that the transfer by the decedent of the fund to his own name could not divest the plaintiff of her right to the money, and as authority for this proposition cited *O'Connor* v. *Dunnigan* (158 App. Div. 334; affd., 213 N. Y. 676). He accordingly found for the plaintiff for the amount on deposit at the time of the decedent's death, and from the judgment entered thereon the defendant executrix appeals.

The recent decision of the Court of Appeals in *Moskowitz* v. *Marrow* (251 N. Y. 380) is determinative of the question presented by this appeal. The court in that case, referring to the decision in the *O'Connor Case* (*supra*), has called attention to the fact that it was decided prior to the enactment of the statute (Banking Law,

§ 144, now § 249), and upon common-law principles. The holding there was that the deposit was a true joint tenancy, irrevocable at the instance of either depositor to the extent of the funds by him deposited. The court (in the *Moskowitz* case) has said that if this be true of the common-law deposits to a joint account, it must be equally true of deposits made under the provisions of the statute. In the *O'Connor Case* (*supra*) the wife had withdrawn all the moneys from the joint account, and deposited them to her own account, dying three days afterward, but it was held that her husband, the survivor, was entitled to recover the moneys withdrawn.

Chief Judge CARDOZO, in his concurring opinion in the *Moskowitz* case, calls attention to the fact that the presumption raised by the statute becomes *conclusive* evidence of the intention of the parties *only when one of the depositors dies with the deposit still intact;* that when a contest in court ensues during the lives of the depositors, distribution is determined, *not solely by the terms of the deposit, which then cease to be conclusive, but by the realities of ownership.* He further calls attention to the fact that the controversy is one where the depositor opening the account has died *with the account in the joint names still open and intact*, and the only question to be determined is the title of the survivor. In such a case, he says, the statute provides that the form of the deposit is conclusive; as to what the true agreement was, the door to controversy is open during the joint lives of the depositors, but closed upon the death of either. *The question was not presented in that case, he says, however, whether a like result would follow if a suit to establish an agreement at war with the presumption had then been pending undetermined.*

The depositor in that case was blind and infirm. Her disability, Chief Judge CARDOZO said, was at least a circumstance pointing to the inference that she was to have the right during her life to use the money as she pleased, and if at once and automatically a joint tenancy arose as an irrebuttable presumption, she would have been subject to suit if she had spent more than half of the deposits in an attempt to mitigate her agony.

The difficulty with the case at bar is that the account *was not still open and intact in the joint names*. It follows, under the circumstances, that no absolute joint tenancy existed, as the trial court has held, and this action should have been decided, not upon the theory that the decedent's death rendered the presumption of an intention to create one conclusive, but rather *whether or not the proof rebutted the presumption*. The proof discloses that he had no such intention, and the judgment should, therefore, be reversed upon the law and the facts, with costs, and judgment directed

for defendant executrix, with costs. Conclusions of law numbered " 1 " and " 2 " are reversed, and said defendant's proposed findings of fact and conclusions of law should be found.

KAPPER, SEEGER and SCUDDER, JJ., concur; LAZANSKY, P. J., votes for reversal and a new trial on the ground that the conclusion reached was against the weight of the evidence. It was largely based upon the testimony of plaintiff, who was incompetent to testify.

Judgment reversed upon the law and the facts, with costs, and judgment directed for defendant executrix, with costs. Conclusions of law numbered " 1 " and " 2 " are reversed, and said defendant's proposed findings of fact and conclusions of law found.