PEARL HARRIS MARROW, Respondent, *v.* ESTHER MOSKOWITZ and Others, as Executors, etc., of FANNIE MANHEIMER, Deceased, Appellants.*

First Department, May 29, 1930.

*Edward C. Weinrib* of counsel [*Benjamin Seligman* with him on the brief; *Shaine & Weinrib*, attorneys], for the appellants.

*Henry C. Burnstine* of counsel [*Burnstine & Geist*, attorneys], for the respondent.

* Affd., 255 N. Y. 219.

MARTIN, J.  On October 3, 1923, the plaintiff's grandmother, Fannie Manheimer, opened a savings account, which is the subject of this action, in the Yorkville Bank of New York city by depositing $4,000 in the statutory form in the joint names of herself and plaintiff.  Thereafter, during the month of April, 1924, she caused four other savings bank accounts which she had in her individual name in the Excelsior Savings Bank, the Bank for Savings, the New Netherland Savings Bank and the Greenwich Savings Bank to be changed to the joint names of herself and plaintiff, and delivered to plaintiff all of the bank books covering these accounts.

During the month of December, 1924, Fannie Manheimer caused each of the banks to be notified in writing that she had revoked the privilege granted to her granddaughter to withdraw money from the account and instructed each to honor no requisition other than her own.  In January, 1925, Fannie Manheimer personally visited the New Netherland Bank, Excelsior Savings Bank and Yorkville Bank, withdrawing the deposits therefrom, and immediately redeposited the same in the respective banks to the credit of herself individually.  She intended similarly to withdraw and redeposit the money in the Bank of Savings and Greenwich Savings Bank, but became ill and was unable to do so.

In the month of April, 1925, Fannie Manheimer again delivered the books covering all these accounts to her granddaughter, expressing regret for what she had done and instructed her to take such steps as were necessary to re-establish the accounts she had changed to her individual name back to the joint names in the statutory form.  Thereupon the plaintiff called upon the New Netherland Bank, Excelsior Bank and Yorkville Bank and requested them, on her grandmother's behalf, to send their representatives to her at her home where she lay ill, to the end that she might reinstate these accounts in the statutory form in the joint names of plaintiff and her grandmother.

The New Netherland Bank and Excelsior Savings Bank complied with this request and the accounts therein were so reinstated. The Yorkville Bank, however, declined to accede to the request, and although plaintiff sought to prevail upon her cousin, who, with his father, had influence with the Yorkville Bank, but whose interests were necessarily adverse to hers, to have that bank comply with her grandmother's request, he refused to do so.  The result was that when the grandmother died in the month of May, 1925, the Yorkville Bank account still remained in the individual name of Mrs. Manheimer.  No moneys whatsoever had been withdrawn either by Mrs. Manheimer or by her granddaughter from any of these accounts at any time.

Four of those accounts were involved in the case of *Moskowitz* v. *Marrow* (251 N. Y. 380), recently decided by the Court of Appeals, where the executors not only attacked the establishment and reinstatement in the joint names and statutory form of the four accounts there directly involved, upon the ground that Mrs. Manheimer so created them for her convenience and without intent to give plaintiff any beneficial interest therein, because she was blind, but the executors attacked the re-establishment of the two accounts in the statutory form in April, 1925, as having been procured by fraud and the undue influence of plaintiff herein. The Special Term, however, found that there was no fraud or undue influence either in the original creation or re-establishment of any of those accounts.

The respondent points out that notwithstanding that decision, the defendants interposed as a defense herein that at the time Fannie Manheimer established the Yorkville Bank account in the statutory form in the joint names of herself and granddaughter in October, 1923, she intended only to further her own convenience because of her blindness and not to vest any beneficial interest therein. in the plaintiff.

After the defendant executors qualified, their attorneys on July 8, 1925, wrote plaintiff demanding " passbooks on ten banks of accounts in the name of Fannie Manheimer, now deceased," and threatened legal proceedings upon failure to comply with the demands. In reply thereto, plaintiff's attorney wrote the executors' attorneys that plaintiff " has not ten (10) pass books in the name of Fannie Manheimer, and the bank books in her possession, which have been forwarded to me to be delivered to the Executors, are the following," naming them, and among them was the bank book of the Yorkville Bank account in the individual name of Fannie Manheimer.

Thereafter, the pass book with other books and papers, to which the executors were entitled, were delivered to the executors' attorneys and by them receipted for. Thereupon defendant executors took the fund into their possession and later refused to pay it over to plaintiff.

The plaintiff asserts ownership by virtue of section 249 of the Banking Law, which is in part as follows:

" 3. When a deposit shall be made by any person in the names of such depositor and another person and in form to be paid to either or the survivor of them, such deposit and any additions thereto made by either of such persons after the making thereof, shall become the property of such persons as joint tenants, and the same together with all dividends thereon shall be held for the

exclusive use of such persons and may be paid to either during the lifetime of both or to the survivor after the death of one of them, * * *."

In arriving at a solution of the question here involved, we are greatly aided by the admissions of the defendants and by a stipulation entered into between the parties. It was stipulated that the denials in the answer to paragraphs 3, 4 and 5 of the complaint should be withdrawn, leaving the facts alleged therein admitted. Paragraphs 3, 4 and 5 of the complaint are as follows:

" 3. That on October 3rd, 1923, said Fannie Manheimer opened account number 91277 with the Yorkville Bank of New York City in the sum of Four thousand ($4,000) Dollars in the name of Pearl Harris or Fannie Manheimer, payable to either or survivor.

" 4. That on January 19th, 1925, said Fannie Manheimer closed said account by withdrawing therefrom the funds thereof which, with accrued interest, then amounted to $4,203.20.

" 5. That simultaneously therewith and on January 19th, 1925, said Fannie Manheimer opened account number 109887 with said Yorkville Bank of New York City by depositing therein the said $4,203.20 in her own name."

It was also stipulated as follows:

" 6. That neither side shall call any witnesses, it being conceded by both sides that each and every witness, if called, would testify upon direct and cross-examination as such witnesses testified in *Moskowitz et al.* v. *Marrow.*"

With these admissions and the stipulation we are, in effect, confronted with practically the same record as that produced in *Moskowitz* v. *Marrow.* It is apparent, therefore, that this account when made was intended to be a joint account and that thereafter Fannie Manheimer withdrew the account and put it in her own name. The defendants rely on that fact, contending that because the account was in the name of Fannie Manheimer at the time of her death, the estate is entitled thereto. It must be borne in mind however, that no money whatever was withdrawn by either party and that it was the same money which had been placed in the joint account which was afterwards deposited in the name of Fannie Manheimer. It is also clear that she afterwards intended to and attempted to reinstate this account as a joint account.

In *Moskowitz* v. *Marrow* (251 N. Y. 380) the Court of Appeals said: " The case of *Matter of Tilley* (166 App. Div. 240; affd., 215 N. Y. 702) is a definite authority to the effect that a true joint tenancy, between Fannie Manheimer and Pearl Harris, arose at the moment when the deposits were made."

The fact that Fannie Manheimer took the deposit out of the joint account and put it in her own name in another account, can in no wise affect the title of the other joint owner, there being no consent by that joint owner to the change in the account. It may be true that while the parties were living it might have been shown that Fannie Manheimer had an agreement with Pearl Harris which would rebut the presumption to be drawn from the statute with reference to the account. The court in a concurring opinion said: " The tenancy, if joint in its creation, was not destroyed by revocation [cf. *Kelly* v. *Beers*, 194 N. Y. 58]. If the form of the deposit was an expression of the true agreement, there could be no change of ownership thereafter by an *ex parte* declaration. *As to what the true agreement was, the door to controversy was open during the joint lives of the depositors. It was closed upon the death of either*."

In *O'Connor* v. *Dunnigan* (158 App. Div. 334), which was similar to this case, the court said: " The moneys represented by this deposit were originally deposited by Joseph Guilfoyle and his wife Mary in this same institution in an account which read: Payable to 'Mary Guilfoyle or Joseph Guilfoyle. Pay to either or the survivor of either.' Four days before the death of Mary Guilfoyle, in the absence of Joseph Guilfoyle, she went to the bank, drew the money and deposited it to an account in her own name. The next day she made a will purporting to dispose of the same. Under this will the defendant executrix claims title to the property."

The court further said: " As between the bank and Mary Guilfoyle she had the right with the possession of the book to withdraw the moneys from the account. Her change of the moneys, however, from this account to another in her individual name, in the absence of and as far as appears without the consent of Joseph Guilfoyle, could not divest Joseph Guilfoyle of his joint ownership in the property. It would be preposterous to claim that an appropriation of personal property by one joint owner to his personal use could divest the interest of the other joint owner, or could in any way be presumed to have been by the consent of his co-owner. In order to change the joint ownership which presumptively existed defendant was required to show that the ownership of Joseph Guilfoyle has been voluntarily surrendered."

In view of the statement of the law made by the Court of Appeals, which seems to be conclusive upon this controversy, the evidence offered would not change the result. Similar evidence was admitted in *Moskowitz* v. *Marrow* (*supra*) and was considered by the court. Conceding the truth of that evidence, we are still of the opinion that plaintiff is entitled to the fund in question.

We have reached the conclusion, therefore, that the judgment is correct and should be affirmed, with costs.

DOWLING, P. J., and SHERMAN, J., concur; MERRELL and O'MALLEY, JJ., dissent.

MERRELL, J. (dissenting). Plaintiff brought this action to recover the proceeds of an account in the Yorkville Bank, standing, at the time of her death, in the name of Fannie Manheimer, the plaintiff's grandmother. The defendants are the executors of the last will and testament of said Fannie Manheimer, deceased. The pass book of the Yorkville Bank containing the entry of said moneys was found in the possession of the plaintiff after her grandmother's death. Upon due demand being made therefor the plaintiff, on July 16, 1925, delivered said pass book to the defendants, executors, her attorney then stating that she made no claim to such portion of the estate. Subsequently the defendants withdrew the moneys. About two years after delivering the pass book to defendants, the plaintiff brought the present action to recover the proceeds of the account.

Originally the money belonged to Fannie Manheimer, the testatrix. It is conceded that on October 3, 1923, the testatrix opened an account in the Yorkville Bank in the names of herself and the plaintiff, payable to either or survivor. It is also conceded that in January, 1925, all of the funds in the joint account, amounting to $4,287.26, were withdrawn by the testatrix. The testatrix at once opened a new account in the same bank in her own name to the amount of the funds thus withdrawn by her. It is further conceded that at the time of the death of Fannie Manheimer the joint account was not intact, but that the testatrix had withdrawn all of the moneys therefrom, and that at the time of her death the bank account stood in the sole name of the testatrix, and not in the joint names of plaintiff and testatrix.

The plaintiff was the granddaughter of the testatrix, and for some time prior to her death had managed her grandmother's business affairs to some extent. The testatrix was a woman of approximately seventy years of age at the time of her death, and while apparently in the possession of her mental faculties, had been for many years prior to her death blind and unable personally to attend to her business affairs. In April, 1924, the testatrix had accounts in five different banks, including the Yorkville Bank account. She at that time caused the same to be changed from her individual name to the statutory form of joint account in the names of herself and the plaintiff herein. A prior appeal to this court concerned the accounts in two of said banks standing at the

time of the death of Fannie Manheimer in the joint names of herself and plaintiff herein. (See *Moskowitz* v. *Marrow,* 224 App. Div. 717.) As to these two accounts, the testatrix, during her lifetime, had attempted to revoke her action in establishing joint accounts in said two banks in the names of herself and the plaintiff herein, and notified the banks of her desire to revoke her prior action, directing said banks to pay no part of the moneys embraced in said accounts to the plaintiff herein, and that the banks should honor no signature other than that of the said Fannie Manheimer for the withdrawal of said funds. As to the two bank accounts involved on the former appeal, it appeared that no change had been actually made, and that the accounts stood in the joint names of the testatrix and the plaintiff at the time of the former's death. This court was of the opinion that the testatrix had effectually revoked her prior action in depositing the funds in said two banks in the joint names of herself and the plaintiff herein, and that the present defendants, as executors of the last will and testament of Fannie Manheimer, deceased, were entitled to recover of plaintiff herein the amount of such deposits. The Court of Appeals, however, held that the deposits in the two banks having been made in statutory form, the moneys being payable to either or survivor, and no change having actually been made prior to the death of Fannie Manheimer, in the absence of fraud or undue influence, the making of such deposit and its continuance in the same form until after the death of testatrix was conclusive evidence of the intention of both depositors to vest title to such deposits and the additions thereto in the survivor. The Court of Appeals held that the notice given by Fannie Manheimer in her lifetime was ineffectual to destroy the statutory form of the deposits, and her attempted revocation not having been acted upon, the deposits standing in the joint names of the testatrix and the plaintiff herein at the time of the death of the testatrix became conclusive evidence supporting the title of the plaintiff thereto. (251 N. Y. 380.)

An entirely different situation is presented in the case of the deposit in the Yorkville Bank. At the time of the death of Fannie Manheimer the account in that bank was not in statutory form. It was in her sole name, she having withdrawn all the moneys out of the bank account during her lifetime. It is conceded that these moneys were originally the sole property of the testatrix, and in the statutory form in which the joint deposit was made the moneys were payable to either or survivor. It seems to me entirely clear that Fannie Manheimer had the right at any time during her lifetime to withdraw the moneys so deposited. In the concurring opinion of Chief Judge CARDOZO upon the former appeal

(*Moskowitz* v. *Marrow*, 251 N. Y. 380) he stated (at pp. 396, 397): " * * * For the depositors themselves, the form is not conclusive in any contest during their joint lives as to the title to the moneys, *nor conclusive after the death of either as to moneys then withdrawn.*" (Italics are the writer's.) And on page 397 Chief Judge CARDOZO further writes: " There is no statement that the form is to be taken as conclusive evidence in any action or proceeding to which either depositor is a party. It is to be conclusive evidence only in an action or proceeding in which the bank or the surviving depositor is a party. *Even then it is to be conclusive in favor of the survivor, not in respect of any moneys withdrawn by either during life, but as to succession by survivorship in respect of any moneys forming part of the deposit after one of them is dead.*" (Italics are the writer's.) It thus clearly appears that the Court of Appeals was speaking concerning moneys, not withdrawn, but standing in joint account, at the death of Fannie Manheimer. In this case there was no joint deposit existing at the time of her death, and, therefore, the plaintiff was not a survivor within the meaning of the statute.

The executors sought at the trial to show that, inasmuch as there was no joint account at the time of the death of Fannie Manheimer, they should be permitted to show that she was ill, infirm and blind, and had been for many years physically incompetent to attend to her business affairs, and that the joint account which was established by her was solely for her convenience. The court at Special Term refused to permit the defendants to prove such facts. We think the situation in the case at bar differentiates it from the case where there was a joint account at the time of decedent's death, and that the defendants should have been permitted to show that the testatrix never intended to and never did vest any interest in her granddaughter in the moneys in the Yorkville Bank. In my opinion since the account in the Yorkville Bank was not in statutory form at the time of the death of Fannie Manheimer, the presumption of joint ownership was, at least, rebuttable, and the court should have received evidence showing the circumstances under which the joint deposit was originally made. The plaintiff's claim to the moneys in question could only be maintained by virtue of the statute. At common law plaintiff by virtue of such a deposit could have acquired no interest either conclusive or presumptive. ( *Kelly* v. *Beers*, 194 N. Y. 49; *Moskowitz* v. *Marrow, supra.*)

In my opinion section 249 of the Banking Law has reference only to a case where at the time of death the account is in joint form. In the case of *Moskowitz* v. *Marrow* (251 N. Y. 380), relied upon in support of the action of the court at Special Term, both

accounts there involved were in joint form at the death of Fannie Manheimer. The executors in that case contended that the sending of the notice to the banks by the testatrix destroyed the statutory form of the account. The Court of Appeals, however, held that the notice was ineffectual and for that reason testimony to establish a lack of intent to create accounts in joint statutory form could not be considered. Chief Judge CARDOZO, in his concurring opinion in that case, stated (at p. 400): " The controversy at hand, however, is one where the depositor opening the account has died, with the account in the joint names still open and intact, and the only question to be determined is the title of the survivor. In such a case the statute says that the form shall be conclusive, and not merely presumptive, evidence of the intention of each that the survivor is to have the whole." And at page 399: " The presumption is no longer subject to be rebutted — the form, in the words of the statute, becomes ' conclusive evidence ' of the intention — when one of the depositors dies *with the deposit still intact.*" (Italics are the writer's.) Plaintiff herein claims solely upon the theory that, there having at one time been a joint account in statutory form, the testatrix was powerless to destroy the same. In his concurring opinion in the prior appeal, Chief Judge CARDOZO specifically points out that the statute is inapplicable to a situation where the moneys have been withdrawn, stating (at p. 397): " Even then it [the form of the account] is to be conclusive in favor of the survivor, *not in respect of any moneys withdrawn by either during life * * *.*" (Italics are the writer's.)

Following the decision in *Moskowitz* v. *Marrow,* the same question arose in the Second Department in *Newhouse* v. *Harrinck* (227 App. Div. 392). In that case the plaintiff recovered judgment at Trial Term. The Appellate Division, Second Department, reversed. RICH, J., writing for the court, stated (at p. 394): " The difficulty with the case at bar is that the account *was not still open and intact in the joint names.* It follows, under the circumstances, that no absolute joint tenancy existed, as the trial court has held, and this action should have been decided, not upon the theory that the decedent's death rendered the presumption of an intention to create one conclusive, but rather *whether or not the proof rebutted the presumption.*"

I am, therefore, of the opinion that Fannie Manheimer during her lifetime had a perfect right to withdraw the moneys which she had formerly caused to be deposited in a joint account in the names of herself and the plaintiff herein, and that having withdrawn the same prior to her death, the provisions of subdivision 3 of section 249 of the Banking Law of this State are inapplicable.

I am, furthermore, of the opinion that the court at Special Term erred in excluding evidence offered by the defendants showing that the testatrix was ill, blind, and created the joint account only for her convenience. In refusing to receive the testimony offered by the defendants, the learned trial justice at Special Term unquestionably based his ruling upon the decision in *Moskowitz* v. *Marrow* (*supra*). I think that the learned trial justice misapprehended the law and failed to note the vital distinction between the case at bar and the *Moskowitz* case. The Court of Appeals held in the *Moskowitz* case that because at the death of Fannie Manheimer the account stood in the name of " Fannie Manheimer and Pearl Harris [now Pearl Marrow] payable to either or survivor," it was not permissible after the death of Fannie Manheimer to show the intent of the parties in making the joint deposit, and that the testatrix, having died without any withdrawal having been made, a presumption of joint ownership in the account was conclusive. In the case at bar there was no joint account at the time of the death of Mrs. Manheimer. The account was then in the sole name of Fannie Manheimer. The right which the plaintiff asserts to this money by virtue of said provisions of the Banking Law can only be asserted in a case contemplated by the statute, namely, that at the time of death the account was in joint statutory form. That such is the case is clearly borne out by the opinion of Chief Judge CARDOZO in the *Moskowitz* case (at p. 398) where the chief judge writes: " The possibilities of injustice inherent in a changeless formula have illustration in the case before us. In April, 1924, at the opening of the joint accounts, the depositor, Fannie Manheimer, was blind and infirm. Her disability is at least a circumstance pointing to the inference that she was to have the right during her life to use the money as she pleased. She became a little later a sufferer from cancer. If at once and automatically a joint tenancy arose as an irrebuttable presumption, she would have been subject to a suit by her granddaughter if she had drawn and spent more than half of the deposits in an attempt to mitigate her agony. The court must have declined to listen to her protest that in opening the accounts she had reserved to herself the privilege of user. Every joint depositor in that view must keep the drafts for his own use within the limits of his moiety, though dominion was retained at the time of the successive deposits by agreement the most explicit. The agreement will avail for nothing if he is summoned to account. I am persuaded that the statute did not envisage that result."

Judge CARDOZO (at p. 399) defines the presumption which the statute creates with reference to joint accounts, as follows: "A presumption, to be sure, there is that the form of the deposit,

unqualified by agreement, is an accurate expression of the realities of title. The presumption is no longer subject to be rebutted — the form, in the words of the statute, becomes ' conclusive evidence ' of the intention — *when one of the depositors dies with the deposit still intact.*" (Italics are the writer's.)

It will thus be seen that the conclusiveness of the presumption rests entirely upon the fact that the joint deposit is intact at the time of death. This deposit not being intact at the time of the death of Fannie Manheimer, any presumption was subject to rebuttal. I am, therefore, of the opinion that the court at Special Term erroneously excluded testimony offered by defendants as to the circumstances under which said joint deposit was originally made. The evidence offered would have wholly destroyed the presumption, if any, in plaintiff's favor.

Further, in my opinion, even assuming there was an indefeasible vesting in plaintiff of the moneys by the joint deposit, the plaintiff, by turning over the pass book to the defendants, as executors, without any reservation, constituted a voluntary payment under a mistake of law, and she cannot legally recover the moneys in question of the defendants. The voluntary relinquishment of her rights to the pass book and the moneys represented thereby, with full knowledge of all the facts, constitutes, if anything, a mistake at law on her part, of which she cannot now be heard to complain. It was not until after two years from the voluntary surrender of said pass book, with the statement of her counsel to the effect that she made no claim to such portion of the estate, that plaintiff, by the present action, seeks to recover said moneys. The delivery of the pass book vested possession and title to the moneys in the executors, and by voluntarily surrendering the book to the executors on their demand, the plaintiff surrendered any rights which she had thereto. (*Ridden* v. *Thrall*, 125 N. Y. 572; *McGuire* v. *Murphy*, 107 App. Div. 104.)

I am, therefore, of the opinion that the judgment appealed from in plaintiff's favor should be reversed, with costs, and plaintiff's complaint dismissed on the merits, with costs.

O'MALLEY, J., concurs in result.

Judgment affirmed, with costs.