*Edmund F. Beagan, Joseph E. Beagan,* for complainant.

*Sherwood & Clifford, Sidney Clifford,* for respondent.

PEOPLE'S SAVINGS BANK IN PROVIDENCE *vs.* SARAH RITA RYNN *et al.*

FEBRUARY 24, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

Condon, J. This is a bill of interpleader brought by the People's Savings Bank in Providence against Sarah Rita Rynn, individually and as executrix of the will of Patrick J. Rynn, deceased, and Aloysius R. Rynn, to determine the ownership of savings account numbered 138498 in said bank in the names of "Patrick J. Rynn or Sarah R. Rynn and payable to either or the survivor of them." After hearing, a decree was duly entered ordering said respondents to interplead as prayed in said bill, and the balance on deposit

in said account was paid into the registry of the Superior Court.

In compliance with said decree, the cause was further heard on bill, answers and oral testimony by a justice of the Superior Court, and thereafter he decided that the balance of this account belonged to the respondent Aloysius R. Rynn, and a decree was duly entered to that effect. From said decree, respondent Sarah Rita Rynn appealed to this court and alleged as her reasons of appeal that the decision upon which said decree is based is erroneous, and that it is against the law and the evidence and the weight thereof.

These respondents are husband and wife. Aloysius R. Rynn is the son of said Patrick J. Rynn, deceased. It appears from the transcript that the father had originally, in his own name alone, a savings account with the People's Savings Bank, numbered 69304, which he opened on December 5, 1918. On February 14, 1922, he changed this account on the records of the bank to read: "Patrick J. Rynn or Aloysius R. Rynn, payable to either or the survivor." On May 5, 1931, he personally withdrew all money on deposit in this account and surrendered the bankbook which the bank thereupon marked "Paid. 5-5-31, 57-37." On the same day immediately after making the above withdrawal he opened account 138498, which is the subject of this suit. The initial deposit in this account was $3,303.88, which was the identical amount withdrawn from the former account.

Patrick J. Rynn died November 9, 1933, leaving account 138498 standing in the form above described and, showing a balance of $5,170.99. At the time of his death he was estranged from his children, and for several years prior thereto had been living alone. After the death of their father, Aloysius R. Rynn and his sister Mary Rynn went to their father's house and found there among their father's personal effects the bankbook for this account. On November 13, 1933, Aloysius filed a petition in the probate court of the city of Providence for the appointment

of an administrator on his father's estate and stated therein that the personal estate was about $5,500. At that time he knew of no other personal estate of his father. Thereafter it developed that Patrick J. Rynn had made a will in which the respondent Sarah Rita Rynn was nominated executrix and designated therein as residuary legatee. This will was declared valid by this court in *Rynn* v. *Rynn*, 55 R. I. 310, 181 A. 289. Later, on January 4, 1934, Aloysius filed a claim against the estate of Patrick J. Rynn in the probate court of the City of Providence for the money in this bank account and, on January 12, 1934, that claim was disallowed by the executrix.

It is obvious from these facts that this is not the familiar joint bank-account case where the right of the surviving payee of the account is being contested by representatives of the deceased, notwithstanding the form of the deposit. We are aware of many such cases adjudicated by this court but our attention has not been directed to any case similar to the instant case. Here the surviving payee of the account is Sarah Rita Rynn, who is also the executrix and the residuary legatee of the will of Patrick J. Rynn, the deceased original depositor of said account. Aloysius R. Rynn is merely a nominal beneficiary under said will. In the instant case, therefore, he is not representing the interest of the deceased depositor. On the contrary, he is claiming adversely to such interest. He bases his right to the money in this account on the ground that his father had no right to close account 69304 without his consent. He contends that Patrick J. Rynn made an irrevocable gift to him of a joint interest in said account and all subsequent additions thereto, and that it was in all respects a true joint tenancy.

It is undisputed that Aloysius never at any time deposited any of his own money in account 69304, that he never went to the bank and made any withdrawals for his own use, and that he never inquired of the bank concerning the bankbook or the condition of the account after he

last saw it in the spring of 1928. Until that time, his father had allowed him access to the book and he occasionally took it to the bank to make deposits for his father. It is not denied, on the other hand, that Patrick J. Rynn continued as heretofore to treat this account as his own, making deposits therein of his personal funds from time to time, making withdrawals therefrom for his personal use, and pledging it to the bank for a loan. Aloysius also admits that he did not know of the substantial withdrawals which his father made during that period, but that he did know of some withdrawals made by his father from 1922 to 1928, and that he did not make any complaint about these withdrawals to his father.

On these facts, the respondent Aloysius R. Rynn contends that the burden is upon the respondent Sarah Rita Rynn, in this court, to show that the findings of fact made by the trial justice are clearly erroneous or fail to do justice between the parties, and that she is bound on this appeal by the inferences which the trial justice has drawn from the testimony. The first part of the contention is a fair statement of the rule where the testimony in the trial court is in conflict on the essential facts or on the principal question at issue. *Green* v. *Johnson,* 53 R. I. 432, 167 A. 142; *Simeone* v. *Antonelli,* 52 R. I. 41, 156 A. 799. But where the evidence is undisputed, as in this case, this court is not bound by the inferences drawn by the trial justice from such evidence. *Stiness* v. *Brennan,* 51 R. I. 284; *Rafferty* v. *Reilly,* 41 R. I. 47.

As we understand the contention of the respondent Aloysius R. Rynn, he is asserting an irrevocable gift to him by his father, Patrick J. Rynn, of an undivided one-half interest in account 69304 as it stood on February 14, 1922 and a like interest in all subsequent deposits. Clearly the burden is upon him to prove this claim. In discharging this burden he must show that Patrick J. Rynn had no right to withdraw any of the funds on deposit in excess of one half thereof, notwithstanding that the form of the

deposit expressly states that it is payable to either. In his brief he seeks to avoid this burden by arguing that the withdrawal on May 5, 1931, of all the funds in account 69304 in the amount of $3,303.88 and the opening of account 138498 in the names of Patrick J. Rynn or Sarah R. Rynn, with that identical amount of funds as an initial deposit, is a "mere bookkeeping transaction" and does not effect in any way the original account. In other words, he contends that it is still the account of Patrick J. Rynn or Aloysius R. Rynn which is evidenced by the new account 138498, notwithstanding the transaction Patrick J. Rynn had with the bank on May 5, 1931. This is an ingenious theory and is substantially the foundation for the contention of Aloysius that he is entitled to the funds on deposit in this account.

We cannot agree with this contention. The evidence clearly shows that Patrick J. Rynn had at all times prior to his death exercised complete dominion over account 69304, and that on May 5, 1931, in compliance with the rules and regulations of the bank he duly withdrew these funds, and the bank closed the account. In order to constitute this transaction in law a withdrawal of these funds, it was not necessary for Patrick J. Rynn actually to receive coin or currency of the country in his hands. Apparently he did receive a check on some bank as is disclosed by the marking 57-37 on the bankbook. Any evidence of the obligation of the bank to him, either by check or by the issuance to him of a new bankbook, as evidence of a new account, must, under the circumstances here, be deemed a withdrawal of the money on deposit in the original account. A bankbook, itself, while it purports to evidence a deposit of actual money in the bank belonging to the depositor, is in reality and in law nothing more than evidence of a debt which the bank owes the depositor. When in this case bank account 69304 was cancelled by the bank on the order of withdrawal made by Patrick J. Rynn of all the remainder of the deposit therein, there

was in law a withdrawal of all the funds credited to this account.

The complainant specifically alleges in the second paragraph of its bill such a withdrawal, and respondent Aloysius R. Rynn admits the same in the second paragraph of his answer but denies that a new account was issued to Patrick J. Rynn and Sarah R. Rynn. From the evidence, we find that Patrick J. Rynn did actually withdraw the funds in account 69304 and did actually open a new account number 138498 in the form above stated.

Now did he have the right to so withdraw all the money in account 69304? If we look merely at the form of the deposit there can be no question that he did. The account by its terms was payable to either Patrick J. Rynn or Aloysius R. Rynn. That means, on the face of it, that either could draw the whole or any part of the deposit. In this State, however, the mere form of the deposit is not conclusive of the question. By a long line of decisions this court has permitted the true intention of the depositor to be shown, if possible, by evidence to that effect. *Providence Institution for Savings* v. *Carpenter,* 18 R. I. 287; *Whitehead* v. *Smith,* 19 R. I. 135; *Woonsocket Institution for Savings* v. *Heffernan,* 20 R. I. 308; *Industrial Trust Co.* v. *Scanlon,* 26 R. I. 228; *Raferty* v. *Reilly,* 41 R. I. 47; *Marston* v. *Industrial Trust Co.,* 107 A. 88; *Sullivan* v. *Cartwright,* 167 A. 132. These cases all go to show that the form of the deposit is not controlling. The theory of the cases appears to be that when a dispute arises, each case is to be decided on its own facts.

Aloysius R. Rynn contends that certain principles laid down in the above-cited cases demonstrate, when applied to the instant case, that Patrick J. Rynn intended on February 4, 1922, to create a joint tenancy in account 69304 and that whatever deposits or credits were made thereafter on said account would be the property of himself and his father, Patrick J. Rynn, as joint tenants. These cases furnish no support for so broad a claim. To begin with not

one of them presents a situation where, as in the instant case, the original depositor withdrew all the funds in the account and the account stands closed or cancelled by payment on the records of the bank. This is a fact of vital importance in the instant case. In all the cases above cited the subject-matter of the suit was an account subsisting at the death of one of the joint payees, and to which the surviving payee was making claim under the form of the account as against the contention of the personal representatives of the deceased payee that the true intention of the deceased was not as appeared from the form of the account.

A careful examination of these cases will show that no principle enunciated in any of them supports the claim of Aloysius R. Rynn, that the form of the account creates a true joint tenancy. In effect he admits this in his brief when he says that the question of the right of one joint tenant as against the other to withdraw from a joint account more than his one-half interest therein has never been considered by this court.

It is true that in *Industrial Trust Co.* v. *Scanlon, supra,* this court did hold, following *Whitehead* v. *Smith, supra,* that there could be joint ownership in a deposit in a bank account but it did not pass upon the question as to what title to the deposit each of the depositors had under the form of the deposit. The real question before the court in that case was whether a gift was intended by the original depositor adding the name of his brother to the bank account and giving him the bankbook. The evidence in that case was to the effect that the bankbook was in the continuous possession of the brother, that the original depositor, on giving his brother the book, told him that it was his to do with as he pleased, and that later he urged his brother to purchase some real estate for himself with it. On this evidence the court held a gift had been shown as both intended and completed.

The court took care to point out that the effect of possession of the book by the donor did not arise in that case, as the book was constantly in the possession of the donee. In *Woonsocket Institution for Savings* v. *Heffernan, supra,* this court had previously held that when the original depositor had retained the book in her own control and the surviving payee had no knowledge of the deposit until a short time before the death of the original depositor, and never had possession of the bankbook, the gift was not complete, and so there was in fact no joint deposit despite the form of the deposit. But in neither this case nor the *Scanlon* case did the question arise as to the right of the original depositor to withdraw the whole amount of the deposit without the consent of the other depositor.

Subsequently, it was held in *Marston* v. *Industrial Trust Co.,* 107 A. (R. I., 1919) 88, that delivery of the bankbook is not a prerequisite to the creating and passing of a joint title in a savings deposit but merely a piece of evidence in shedding light upon the intention of the parties. Where that intention is clearly shown, it said, the possession of the book is immaterial. The court did not pass upon the title to the deposit which each payee held under this form of joint ownership as it was not required to do so. The original depositor had deceased and the surviving payee was asserting title to the deposit in accordance with its terms.

It will be found in all the cases cited by the respondent that the deposit was intact at the decease of the original depositor, whereas in the instant case the original depositor long prior to his decease withdrew the funds and the bank closed the account. It is clear to us that these cases do not support the legal principles which the trial justice applied to the instant case as contended by Aloysius R. Rynn.

It seems to us that the decision of the trial justice in the instant case can be supported only if Aloysius R. Rynn can prove a completed gift of a joint interest in account

420

69304,—the mere form of the deposit not being sufficient —and can also show that such a gift in a bank account under such form creates a real joint tenancy which precludes one of the joint tenants from withdrawing more than one half of the deposits regardless of who originally owned the money that was deposited.

In support of such a contention he cites the following cases from New York: *O'Connor* v. *Dunnigan*, 158 N. Y. App. Div. 334, affirmed without opinion in 213 N. Y. 676; *Moskowitz* v. *Marrow*, 251 N. Y. 380, 167 N. E. 506; *Marrow* v. *Moskowitz*, 242 N. Y. Supp. 523. The first case only is in point. The latter cases turn on the construction of a New York statute making the form of the deposit, in the absence of fraud or undue influence in any action or proceeding to which the bank or the surviving depositor is a party, conclusive evidence of the intention of the depositors "to vest title to such deposit and the additions thereto in such survivor." This statute creates, under certain circumstances, a conclusive presumption that has no counterpart in this State.

In *O'Connor* v. *Dunnigan*, *supra*, the depositors were Joseph and Mary Guilfoyle, husband and wife, who originally made a joint deposit in the following form: "Payable to Mary Guilfoyle or Joseph Guilfoyle. Pay to either or the survivor of either." Four days before she died, Mary withdrew all of this account and made a new deposit in her own name. The next day she made her will disposing of the same. The court held the withdrawal did not destroy the joint account and said it made no difference who owned the money originally. In a brief opinion, the court appears to hold that the joint tenancy as to the whole of the deposit precludes one depositor from withdrawing the same without the consent of the other notwithstanding the express language of the terms of the deposit that either may withdraw. The court said: "In order to change the joint ownership which presumptively existed, defendant was required to show that the owner-

ship of Joseph Guilfoyle has been voluntarily surrendered." This view of a joint bank account is not the law in Rhode Island. It does not give effect to the plain language used by the bank and the depositors to express the power over the account which they, themselves, wished to convey.

The respondent, relying upon this authority, would have us hold, in the instant case, that a form of deposit of the kind before us creates a true joint tenancy which a donor, even though retaining possession of the bankbook and exercising exclusive dominion over the account, is powerless to break. The defect in this contention is that the terms of the deposit are not apt words to create a true joint tenancy. Here the donor, by expressly requiring the bank to pay either of those named in the book, has reserved the right to withdraw the whole or any part of the funds on deposit, while at the same time granting a like right to his donee, which is, however, conditional on the presentation of the book. As was well said in *Marble* v. *Treasurer & Receiver General*, 245 Mass. 504: "This right violates the essential character of a joint tenancy." In a joint tenancy a tenant may sever the tenancy but only to the extent of disposing of his own interest. In the joint account in the instant case the words "payable to either" can only mean that the whole or any part of the account may be withdrawn by either depositor presenting the bankbook and by complying with other regulations of the bank governing the deposit to which the depositors assented when they opened the account.

When Patrick J. Rynn added his son's name to account 69304 he intended to reserve to himself the right to withdraw the whole or any part of the money on deposit and, acting in accordance with such an intention, he did so withdraw these funds. It appears clearly throughout the evidence, both from the manner in which he handled this bank account and from the attitude of Aloysius R. Rynn towards it, that no irrevocable gift of it or any part of it was ever intended. Neither as a matter of law nor by the

evidence has the respondent Aloysius R. Rynn shown that the disposition of account 69304 by his father was invalid or unwarranted.

We find, therefore, that account 138498 was opened by Patrick J. Rynn as alleged in complainant's bill of complaint, that Aloysius R. Rynn has no interest therein and that he is not entitled to the proceeds of this account now in the registry of the Superior Court. To find otherwise, it seems to us, is to close our eyes to the plain intention of Patrick J. Rynn as consistently evidenced by his acts in dealing with this account. Following the precedents in this State, we have carefully examined the transcript in search of the intention of Patrick J. Rynn in changing deposit 69304 by adding the name of his son Aloysius thereto. We have not accepted the form of the deposit as necessarily controlling. And in so doing, we were impressed with the force and cogency of the reasoning of *Cardozo, C. J.*, in his concurring opinion in *Moskowitz* v. *Marrow, supra,* wherein the court declined to hold that the language of the New York statute above referred to created an irrebuttable presumption as between the depositors themselves. He said, at page 397: "The plain implication is that as between the depositors themselves, the form of the deposit gives rise to a presumption and nothing more, but that after the death of either leaving a deposit then subsisting, the presumption becomes conclusive as to the title of the survivor.

"A reading of the statute that would make the presumption irrebuttable except within these limits would do violence to intention and foster litigation. It would do violence to intention, for those who open such accounts have seldom any thought of restricting their enjoyment of the fund, their right to draw and spend, by the shackles of a formula." He went on to add that, if at once and automatically a joint tenancy arose as an irrebuttable presumption, the original depositor in that case would have become subject to a suit by her granddaughter if she had

drawn and spent more than half of the deposits. In that case, however, the original depositor had died with the bank account in the joint names still open and intact in the bank and therefore the court was compelled to hold, under the statute, that the right of the survivor to the account was conclusively presumed.

The views of *Cardozo, C. J.*, last-above quoted, are all the more forcible where there is no statute, as in this State. Indeed the New York statute was the result of a decision of the Court of Appeals in that State—*Kelly* v. *Beers*, 194 N. Y. 49—in which it enunciated a rule that a deposit by one in the name of himself and another or the survivor, was unavailing in and of itself to give to the other any interest whatever, either conclusive or presumptive. The court, in that case, after stating the rule, stated that it must look to the evidence to find the true intention of the depositor in opening the deposit as she did, and thereupon the court found that the evidence proved an intention on her part to create a joint tenancy. Without saying so, this court proceeded in like manner in *Industrial Trust Co.* v. *Scanlon, supra*—a case very similar to the New York case in its facts—and reached a like result.

We must keep constantly in mind, in the determination of a case of the kind before us, that the party asserting a right to the deposit, as survivor of the other depositor, who originally opened the account and whose money only was deposited in the account, must show a completed gift of a joint interest in the deposit, and also the intention of the original depositor to make such a gift *in praesenti.*

If the intention is that it is to take effect only after death, that is ineffectual to support the gift. *Providence Institution for Savings* v. *Carpenter*, 18 R. I. 287; *Flaherty* v. *O'Connor*, 24 R. I. 587. In *Barstow* v. *Tetlow*, 115 Me. 96, 99, the court says: "To constitute a valid gift *inter vivos* it must be absolute, irrevocable and complete, whether the donor die or not, and the subject of it must

be delivered to the donee so that the donor parts with all present and future dominion over it."

In seeking the correct solution of the question raised in the instant case, a degree of caution is required that was aptly stated by *McSherry, C. J.,* in the following words: "Always bearing in mind that the fund belonged to only *one* of the parties named as joint owners, and that you are searching for evidence tending to show a gift of that fund, or of a part of it, to a person who confessedly in the first instance owned none of it, the control retained over the *whole* of it by the original owner, under the very terms of the deposit which he makes, is of great significance in repelling any inference that he intended to part with his ownership in any way whatever. Particularly is this so when the original owner retains possession of the pass-book and when the deposit is made in a Savings Bank, by the rules of which the book must be produced before the deposit can be withdrawn." *Whalen* v. *Milholland,* 89 Md. 199, 203.

If these considerations are of such importance where the original depositor has died leaving the deposit intact in the bank, how much more important are they in the instant case where the original depositor closed the account and withdrew all money on deposit therein over two and a half years before his death and where the claim to the funds in a different account is being made by one whose name does not appear thereon but who founds his claim upon his name appearing jointly with the original depositor on the closed account. There is, therefore, no merit in this respondent's further claim that a trust should be impressed in his favor on the funds withdrawn from account 69304.

The only question remaining for us to determine is whether the proceeds of this account now in the registry of the Superior Court shall be paid to Sarah Rita Rynn, individually, as the survivor under the form of deposit

138498, or to her as executrix under the will of Patrick J. Rynn, deceased.

In our view, the evidence that Patrick J. Rynn had an intention, on May 5, 1931, to make a present gift of a joint interest in this bank account is not strong. Sarah Rita Rynn did not know until his death that she had an interest in this account. She signed a card, at the request of the deceased, but did not know what it was for. She did not see the bankbook until after Patrick Rynn's death. He never told her about the bank account or that he had opened it in his name and her name jointly. He asked her to sign the card and when she appeared reluctant to do so, he said to her: "You take that card and put your name on it, otherwise what I have will go to the Portuguese on North Main Street." And at that interview, when she asked him what the card was for, he replied: "Never mind. Some day you will find out." This evidence throws little light upon the probable intent of Patrick J. Rynn when he placed Sarah R. Rynn's name on this account, but such light as it does cast seems to us to disclose an intention on his part that Sarah Rita Rynn should have the benefit of this account only after his decease. His secretiveness in asking for her signature on a plain white card with a number on it, without explaining to her what it was for, and his vague answer that she would know some day, as well as his failure or neglect to acquaint her with the existence of the bank account or to advise her where the bankbook could be found, even in his last illness, certainly does not indicate the intention to make a present gift. Viewed in the most favorable light to Sarah Rita Rynn this evidence is much too weak to prove a gift of this account to her individually.

We, therefore, hold that the proceeds of the account in the registry of the Superior Court are payable to Sarah Rita Rynn as executrix of the will of Patrick J. Rynn, deceased.

The appeal of Sarah Rita Rynn is sustained, the decree of the Superior Court is reversed. The respondents may present to us on March 8, 1937, a form of decree in accordance with this opinion.

*Edwards & Angell,* for complainant.

*James M. Gillrain, John M. Clifford,* for Sarah Rynn.

*Comstock & Canning, Andrew P. Quinn, George A. Johnson,* for Aloysius Rynn.