**THE COLUMBUS NATIONAL BANK OF PROVIDENCE, Plaintiff,**

v.

**John V. KEAN, Administrator of Estate of Enrico Lorenzi, and Agnes Allieri, Defendants.**

**PROVIDENCE INSTITUTION FOR SAVINGS, Plaintiff,**

v.

**Agnes ALLIERI and John V. Kean, Administrator of Estate of Enrico Lorenzi, Defendants.**

**Civ. A. Nos. 2103, 2109.**

United States District Court
D. Rhode Island.
July 28, 1958.

Owen P. Reid, Edward J. Regan, Providence, R. I., Joseph Graglia, Boston, Mass., for Agnes Allieri.

John V. Kean, Providence, R. I., for John V. Kean, Administrator.

DAY, District Judge.

These are actions of interpleader brought under the provisions of Title 28 U.S.C.A. § 1335 and were consolidated for trial. In Civil Action No. 2103, the plaintiff, The Columbus National Bank of Providence, seeks a determination of the ownership of a certain joint savings account, No. 11645, standing in the names of Enrico Lorenzi, who died intestate domiciled in Providence, Rhode Island, on January 8, 1956, and the defendant, Agnes Allieri, and payable to either or the survivor. In Civil Action No. 2109, the plaintiff, Providence Institution for Savings, seeks a similar determination of the ownership of a second joint savings account standing in the names of the said Enrico Lorenzi and Agnes Allieri and also payable to either or the survivor.

In her answers in each action the defendant, Agnes Allieri, hereinafter called the claimant, alleges that the decedent made an absolute gift to her of a joint interest in each of said accounts prior to his death and that as the survivor she is the owner of them. The other defendant, John V. Kean, in his capacity as administrator of the estate of the decedent, in his answers alleges that the decedent did not during his lifetime assign or transfer to the said Agnes Allieri any rights of ownership or beneficial interest in said accounts, and that he was the sole owner of them at the time of his death.

After the filing of the defendants' answers and the payments by the plaintiffs into the registry of this Court the sums on deposit in said accounts, an order of interpleader in each of these actions was entered by this Court on February 19, 1958.

From the evidence it appears that the decedent was at the time of his death fifty-eight years of age. Born in Italy, he came to this country in 1923 and followed the occupations of laborer and gardener until his death. It further appears that in 1923 while living in France he married the sister of Raymond Allieri, husband of the claimant. One child, a son, Bruno, was born of this union in 1924 in France, the decedent's wife not having accompanied him to this country. In 1925, the decedent made the first of two visits to Italy to see his son and wife. The latter died in 1951.

After his arrival in this country the decedent lived in Rhode Island and, except for brief periods when he resided elsewhere, spent most of his life in that state. It is clear that he was a hardworking, frugal person. His needs were simple and he lived in a very conservative, modest fashion. There is no evi-

dence of his being generous or free with his money.

In May, 1938, he opened the first of the above disputed joint accounts, No. 390418 in the Providence Institution for Savings, with a deposit of $40. Thereafter he made regular deposits therein until within six months of his death. On November 28, 1952, the date when claimant contends he made a gift to her of the monies on deposit in this account, its balance was $3,344.94. At the date of his death it was $4,322.04. Between May, 1938 and his death, decedent made but two withdrawals from this account and allowed all the dividends thereon to accumulate.

The second disputed joint account, No. 11645, was opened on December 11, 1950 with an initial deposit of $1,000. No withdrawals were ever made from this account, and on November 28, 1952, when claimant contends the decedent also made a present gift of a joint interest in it to her, its balance was $1,858.21. Subsequently decedent made additional deposits therein, allowed the dividends to accumulate, and the balance therein at the date of his death was $2,464.24.

It further appears that in early 1952 claimant and her husband made a trip to Italy and while there visited with decedent's son, Bruno. Upon their return they discussed their visit with decedent and urged him to visit his son. Thereafter, on November 27, 1952, decedent called at their home. According to claimant there was on this occasion, apparently for the first time, an indication by the decedent of his desire to change the form of his savings accounts so that they would be payable to himself and another person. The details of this conversation or discussion as given by claimant were somewhat vague, but it is clear that decedent wanted his brother-in-law, the claimant's husband, to come to Providence the next day for this purpose. Upon being informed that the latter could not do so, decedent suggested claimant could go, and she consented, returning that day with decedent to Providence. It was during this discussion,

claimant testified, that decedent told her "that the money is mine and any time I needed money to live, to go and draw it out". And she added that he then made a gift of the monies to her. On the following day, November 28, 1952, she accompanied decedent to each of the plaintiff banks and her name was added as a payee of each of said accounts.

Despite this change in the form of the accounts, decedent retained possession of both of said bank books until December, 1953. On December 15, 1953, he left Boston for Italy by plane to visit his son and the latter's family. Before leaving he delivered the bank books for each of the disputed joint accounts and a postal savings certificate standing in his name to the claimant. Upon his return to Boston on February 14, 1954, he visited with the claimant and her husband for two days, and the pass books and certificate were promptly redelivered to him before his return to Providence. At this time, claimant testified, she and her husband advised the decedent that he should rent a safe for the safekeeping of the bank books, his postal savings certificate, his passport and citizenship papers. No action with respect to this suggestion was taken by the decedent until June 27, 1955 when according to claimant, at his request, she came to Providence and a safe was rented in their joint names, the rental therefor being paid by the decedent. At that time the bank books, postal savings certificate, decedent's passport and citizenship papers were placed in the safe and remained there until after his death. The records of the safe deposit company establish that claimant did not effect any access to this safe until after decedent's death although the latter had opened it on January 4, 1956, within a week of his death.

The evidence also shows that in 1955 two joint savings accounts were opened in Massachusetts banks which were payable to the decedent and the claimant or the surviver. It is undisputed that the monies deposited were those of the decedent. The total amount of these two

accounts was $1,100. The first was opened in January, 1955 with a deposit of $1,000; the second in October, 1955 with a deposit of $100. On December 30, 1955, claimant admittedly at the direction or suggestion of the decedent transferred $500 from the first account to the second because the latter carried a higher rate of interest. No further withdrawals by the claimant were made until after the death of the decedent.

The only other corroborative testimony of the asserted gift by the decedent come from her husband who testified that decedent told him in the summer of 1955 that the monies on deposit in the disputed joint accounts were "his wife's to do what she pleased with". Under cross-examination, however, he admitted that immediately after the decedent's burial he sought to be appointed as the administrator of the decedent's estate and that in reply to a letter from Bruno, who had apparently inquired of him about these joint accounts, he wrote:

"We cannot send you the money that is deposited at the bank until we are sure that everything is settled to your satisfaction."

His explanation of this statement was in effect that although he realized the monies belonged to his wife he wished Bruno to have them. Claimant while admitting she knew of her husband's efforts to become administrator and that he was writing to Bruno for this purpose disclaimed all knowledge of the contents of her husband's letter and insisted that any statements therein concerning the ownership of said accounts were without her authorization.

Opposed to the testimony of claimant and her husband that decedent had made a gift to her of a joint interest in the accounts was that of Mrs. Betty Del Fino who with other members of her family had known the decedent since his arrival in the United States. It is clear that from that time until his death she and they were on close, friendly terms with him. They saw each other frequently while he lived in Rhode Island and there were apparently many discussions among them about decedent's financial affairs. She testified that decedent, prior to leaving for Italy in December, 1953, told her that he had added claimant's name to his bank books so that in the event of his death his son would get his savings without their being reduced by taxes, probate expenses and lawyer's fees. This theory was apparently expounded by members of her family in conversations with the decedent. She also testified that decedent was always on friendly terms with his son, had frequently sent him sums of money for his education, and that pictures of the latter, his wife and children were prominently displayed in decedent's home up to the time of his death. While claimant and her husband testified that decedent expressed some vague dissatisfaction with his son upon his return from Italy their testimony in this regard was directly contradicted by Mrs. Del Fino who testified that decedent upon his return related how pleased he had been to see his son and his family and expressed his intention to work a few more years and then return to Italy where he said he could live "like a king" on his savings. In addition, she testified that in November, 1955 the decedent, upon his discharge from a local hospital, expressed a growing lack of confidence in the claimant's promise to transmit his savings to his son upon his death because of her failure to visit him more than once while he was hospitalized.

There was also other testimony given by one Pierina Erba and Bruno Lorenzi in answer to interrogatories by the defendant administrator relating to purported statements of the decedent concerning his financial means and his intention to return eventually to Italy and live on his savings.

It is undisputed by the claimant that she deposited no money of her own in either of the disputed joint accounts and that she made no withdrawals from either of them during the lifetime of the decedent. Her explanation of her failure to make any withdrawals was that she did not need the money.

In a case of this sort the applicable law of Rhode Island is clearly set forth in Wyatt v. Moran, 1954, 81 R.I. 399, at page 403, 103 A.2d 801, at page 803, where the Supreme Court said:

"In this class of cases it is well settled that a claimant has the burden of establishing a gift *inter vivos* by clear and satisfactory evidence. Carr v. MacDonald, 70 R.I. 65, 37 A.2d 158; Old Colony Cooperative Bank v. Burger, 63 R.I. 223, 7 A.2d 725. He must establish by such degree of proof that the donor intended, in praesenti, to divest himself of the exclusive ownership and control over the subject matter of the alleged gift and to vest such ownership and control jointly in the claimant. In other words, such gift must be fully executed and go into immediate and present effect. Tabor v. Tabor, 73 R.I. 491, 57 A.2d 735; Weber v. Harkins, 65 R.I. 53, 13 A. 2d 380; People's Savings Bank in Providence v. Rynn, 57 R.I. 411, 190 A. 440; Raferty v. Reilly, 41 R.I. 47, 102 A. 711. If the transaction in question was to take effect only after the death of the donor, then under the well-settled law it is a testamentary disposition and not a gift intervivos. McCartin v. Devine, 66 R.I. 100, 103, 17 A.2d 864; People's Savings Bank in Providence v. Rynn, supra."

Where, as here, the property of a deceased person is in dispute, the testimony of witnesses with respect to his donative intent demands the closest scrutiny. Carr v. MacDonald, 70 R.I. 65, 37 A.2d 158.

In my opinion the claimant has failed to sustain the burden imposed by law upon her of establishing a gift intervivos to her by clear and satisfactory evidence.

Her testimony and that of her husband, while tending to prove that a long friendship existed between them and the decedent, falls far short of proving that the decedent in November, 1952 made a gift inter-vivos to her of a joint interest in the disputed joint accounts. Admittedly, they represented the bulk of his life's savings. Having in mind his frugality and habits, I am unwilling to believe on the evidence presented that he intended that the claimant could thereafter at her whim withdraw and spend any part or all of these hard earned funds. While not controlling, it is noteworthy that he continued to retain the exclusive possession of his bank books until December, 1953 when he went to Italy for a brief visit and that upon his return he immediately resumed the exclusive possession of them which he retained until June 27, 1955 when the joint safe was opened. And it is also to be noted that claimant made no withdrawals from either of the accounts while the pass books were in her possession, and none while they were later in the safe to which she had a key.

Moreover, there is no credible evidence that the decedent was unfriendly with his only son or disposed to disinherit him. On the contrary, the testimony of Mrs. Del Fino satisfied me that he was fond of his son and that he added claimant's name to the disputed accounts solely for the purpose, as he thought thereby attainable, of securing the maximum possible benefit therefrom to his son in the event of his death. I am further satisfied from all the testimony and the reasonable inferences to be drawn therefrom that the decedent at all times after November 28, 1952 regarded the monies on deposit in the disputed joint accounts as his sole property and that he did not during his lifetime make a gift inter-vivos of any beneficial interest in either of said accounts to the claimant.

In conclusion, I find that the said Enrico Lorenzi at the time of his death was the sole owner of the monies on deposit in said joint accounts, that the claimant had no interest whatever therein, that the defendant, John V. Kean, in his capacity as administrator of the estate of said Enrico Lorenzi, is the present owner of the proceeds from said joint accounts now on deposit in the registry of this

Court and is entitled to the payment of said proceeds from said registry by the Clerk of this Court.

Judgment shall be entered in each of the above entitled actions in accordance with the findings above set forth.